Filed 9/13/21  De Jong v. Beach CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| CRAIG DE JONG,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GEORGE BEACH et al.,<br><br>Defendants and Appellants. | C085462 & C086926<br><br>(Super. Ct. Nos. STK-CV-URP-2014-0008188 & 39-2014-00314863-CU-OR-STK) |

In these consolidated appeals, George Beach, Susan Beach, Nicola Bellino, and Judith Bellino challenge the trial court's award of compensatory and punitive damages, as well as costs-of-proof, to Craig De Jong.[1]  The compensatory damages were awarded

---

[1]    We refer to the Beaches and Bellinos collectively as appellants.  Kim Solario is not a party to these appeals.

In this opinion, undesignated statutory citations are to the Code of Civil Procedure.

1

after the trial court found that appellants conspired with the Bellinos' daughter, Kim Solario, to deprive De Jong of his 80 percent interest in a house located in Escalon California (the Escalon property). The trial court imposed punitive damages based on its findings that appellants and Solario engaged in conduct that was despicable and carried on in willful and conscious disregard for De Jong's right to the property. The trial court additionally found that appellants and Solario each subjected De Jong to cruel and unjust hardship in conscious disregard of his rights so that their conduct was oppressive under Civil Code section 3294, subdivision (c)(2). The trial court ordered appellants and Solario to jointly pay costs-of-proof to De Jong in amounts specified for each of them but not to exceed a collective total of $189,532.50.

In case No. C086926, (1) the Beaches argue they owed no fiduciary duty to De Jong because this case involves a resulting trust for which California law does not create a fiduciary relationship, (2) appellants contend De Jong is barred from recovery for failure to mitigate his damages, (3) the Beaches argue that De Jong ratified their conduct through his acquiescence, (4) the Beaches argue that De Jong's negligence cause of action against them is barred by the statute of limitations, (5) the Bellinos assert that they are not liable for fraudulent transfer, money had and received, or unjust enrichment because the evidence in the record did not support these claims, (6) appellants contend the trial court erred in holding them liable for causes of action not actually asserted against them by De Jong, (7) the Bellinos argue they were erroneously held liable for breach of fiduciary duty because they did not owe De Jong a fiduciary duty, (8) appellants contend insufficient evidence supported the trial court's finding that they conspired against and aided and abetted each other in depriving De Jong of his interest in the house, (9) appellants argue that the evidence was insufficient to show they acted with oppression or malice toward De Jong, (10) appellants argue that if compensatory damages are reduced based on their arguments, so too must the punitive damages be reduced to comport with constitutional due process guarantees, and (11) the trial court

2

erred in giving De Jong a double recovery in the form of prejudgment interest and capital appreciation on a subsequent purchase by Solario of a residential property located in Ripon, California (the Ripon property).

In case No. C085462, appellants contend (12) De Jong forfeited the right to recover costs-of-proof because he did not bring a motion to compel further responses, (13) they had good faith bases for denying De Jong's requests for admission, (14) appellants had "other good reasons for denying the requests" for admission, (15) the trial court erred in awarding costs-of-proof where no proof was made that De Jong forgave or excused payment owed to him or that the Bellinos requested that the Beaches transfer title to Solario, (16) the award of costs-of-proof must be reversed to the extent that it includes fees incurred after the close of the evidentiary phase of trial, (17) the trial court abused its discretion in awarding costs-of-proof for matters outside the scope of De Jong's requests for admission, (18) the trial court improperly awarded costs-of-proof for costs not actually incurred, and (19) the trial court erred in making appellants jointly and severally liable for the entire award of costs-of-proof.

We reach the following conclusions: (1) The Beaches had a fiduciary duty to De Jong under the resulting trust that they intentionally breached. (2) Appellants have forfeited the issue of mitigation of damages through deficient appellate briefing. (3) Appellants' assertion of posttransfer ratification is not supported by the record. (4) The Beaches do not address the trial court's alternate finding that accrual of the statute of limitations for the negligence claim was equitably tolled. We affirm on this unchallenged, alternate basis. (5) The Bellinos' challenge to their liability for fraudulent transfer, money had and received, and unjust enrichment rests on an assertion of insufficient evidence that is refuted by the appellate record. (6) Even if the trial court erred in holding appellants liable for some causes of action not asserted against them in the operative complaint, any such error is harmless because the trial court found that each of the appellants was liable for additional causes of action that were properly alleged.

3

(7) Likewise, the possibility that the trial court erroneously held the Bellinos liable for breach of fiduciary duty is harmless because the evidence supports the conclusion that the Bellinos were liable for fraudulent transfer, money had and received, and unjust enrichment. (8) Ample evidence supported the trial court's factual finding that appellants and Solario conspired and aided and abetted each other in depriving De Jong of his interest in the house for which he contributed 80 percent of the purchase price. (9) The evidence was also sufficient to show that appellants acted with oppression and malice toward De Jong. (10) Because we determine that appellants have not demonstrated error requiring reduction of compensatory damages, we reject their contention that a reduction in compensatory damages concomitantly requires a reduction in punitive damages. (11) The trial erred in awarding De Jong prejudgment interest in addition to appreciation on the Ripon property. (12) De Jong was not required to bring a motion to compel further responses to those responses given by the Beaches and Bellinos that amounted to failure to admit requested facts. (13) Appellants have not demonstrated that the trial court abused its discretion in implicitly rejecting their argument that they had good faith bases for denying De Jong's request for admission. (14) The Bellinos have demonstrated an abuse of discretion in the trial court's award of costs-of-proof for three of their responses to De Jong's requests for admission. (15) Appellants have not established that the trial court's award of costs-of-proof included matters for which no proof was made. (16) We reject appellants' assertion that costs-of-proof are constrained to fees incurred during the evidentiary phase of trial. (17) The trial court erred in awarding, as costs-of-proof, fees incurred for opposing appellants' request for a jury trial and for preparing a motion in limine to exclude appellants' evidence. (18) Appellants have not demonstrated error in the trial court's allocation of costs-of-proof among appellants. (19) The trial court erred in making appellants jointly and severally liable for each other's costs-of-proof.

Accordingly, we affirm the trial court's judgment insofar as it awards compensatory and punitive damages to De Jong, but reverse to the extent that the judgment awards both prejudgment interest and appreciation on the Ripon property to De Jong. On remand, the trial court shall award either prejudgment interest or appreciation on the Ripon property to De Jong. We reverse the award of costs-of-proof with instruction that the trial court strike costs-of-proof relating to De Jong's requests for admission numbers 2, 4, 5, and 15 to the Bellinos; exclude time claimed by De Jong's trial counsel for opposing the request for jury trial and in moving in limine to exclude appellants' evidence; and strike the imposition of joint and several liability on appellants for the costs-of-proof.

## FACTUAL AND PROCEDURAL HISTORY

### *Purchase of the Escalon Property*

During the summer of 2008, De Jong began a dating relationship with Solario while his divorce was being finalized. In December 2008, De Jong began living with Solario in a house on East River Road in Escalon California. The Escalon property consisted of a one-acre ranchette that was owned by Judith Bellino and situated next to the Bellinos' own property.

At some point, Solario informed De Jong that her parents intended to sell the Escalon property and asked if he would be interested in buying it. Not long thereafter, the Bellinos and De Jong agreed on a "short sale" purchase price of $345,000. However, the two lenders who held liens on the Escalon property would not accept a purchase price below $425,000. De Jong borrowed $340,000 from his friends for the purchase of the Escalon property. However, his available funds were $85,000 short of the purchase price. To help him bridge the shortfall, the Bellinos reached out to their longtime friends, the Beaches. The Beaches agreed to loan $85,000 to De Jong. In August 2009, the Beaches signed a residential purchase agreement as copurchasers for the Escalon

5

property. The residential purchase agreement shows that the offer to purchase initially came from De Jong alone in February 2009. The Beaches later cosigned part of the residential purchase agreement.

The residential purchase agreement does not mention Solario, nor does it contain her signature. She was not involved in negotiating the purchase. And Solario did not pay any amount toward the purchase of the Escalon property.

Shortly after the residential purchase agreement was signed, De Jong determined that he did not want to purchase the Escalon property in his name because it might "muddy" his ongoing divorce proceeding. Solario informed her parents, who in turn told the Beaches. The Bellinos coordinated the collection of money to purchase the property and there was "a very quick change of names" so that the Beaches alone held record title. De Jong discussed the matter with the Bellinos and understood that the Beaches would hold title for his benefit. On August 12, 2009, the Beaches and De Jong signed an addendum that removed De Jong's name from all purchase documents related to the property. The Beaches understood that the balance of the purchase price was coming from De Jong and that no one was gifting the Escalon property to them.

The Beaches understood that their $85,000 loan did not represent the full purchase price for the Escalon property. The Beaches became record owners of the property, having taken title from Judith Bellino. George Beach testified that he understood that he was holding title to the Escalon property for the benefit of himself, his wife, De Jong, and Solario. At trial, Solario testified that the Beaches were holding title to the Escalon property for her and De Jong.

The Beaches completed the purchase of the Escalon property for $425,000 using the proceeds contributed by De Jong. After the close of escrow, George Beach sent a check in the amount of $1,258.85 to De Jong due to an overpayment to escrow.

6

### *The Conspiracy to Transfer the Property to Solario*

After the close of escrow, Solario drafted a "real estate note agreement" that purported to issue 430 shares in the Escalon property, each valued at $1,000. The proposed agreement declared that Solario owned 345 shares and the Beaches owned the other 85 shares. The agreement provided that "[t]he shares owned by George & Susan Beach may be sold only to Kim Solario at the rate of $1000.00 per share." The proposed agreement did not mention De Jong having any beneficial interest in the property. In an e-mail sent in October 2009 to George Beach, Solario reported that the Bellinos intended to work on "buying . . . out" the Beaches when the Bellinos returned from Belize.

A revised version of the agreement was signed by the Beaches and Solario on August 14, 2009. The revised agreement stated that the Beaches would receive interest in the amount of 6.5 percent and set the maturity date as June 1, 2010. As with the proposed agreement, the revised agreement declared that Solario "owns 345" of the 430 shares representing ownership of the Escalon property. De Jong was not part of the negotiations, did not sign the agreement, and was unaware appellants planned for Solario to receive title to the Escalon property.

In November 2010, George Beach personally delivered a property tax bill for the Escalon property to De Jong for De Jong to pay. George Beach did not discuss the plan to transfer the property to Solario with De Jong. De Jong did not pay rent to the Beaches. De Jong intended to sell the Escalon property after January 1, 2012, and repay the Beaches from the proceeds.

In January 2011, the Beaches, the Bellinos, and Solario met in the kitchen to discuss the Escalon property. During the kitchen meeting, the Bellinos agreed to provide Solario with the money to pay off the loan made by the Beaches. In return, the Beaches would transfer title to Solario. At trial, Solario confirmed that the participants in the kitchen meeting "agreed that I would be placed on the title" to the Escalon property.

De Jong was not present during the meeting nor did he know about the plan to transfer the property to Solario.

De Jong and Solario ended their dating relationship in February or March 2011. De Jong moved out of the Escalon property and told Solario that she and her children could stay in the property until the end of 2011. Thereafter, De Jong intended to sell the property and repay the Beaches.

In March 2011, George Beach sent a letter addressed to Solario and De Jong in which he noted that repayment of the note was overdue. The letter notes: "Susan [Beach] and I value our relationship with the Bellino family, and our friendship with you and Craig [De Jong]. We have been patient and understanding of your personal financial circumstances. However, we are now well into the second year and our forbearance is at its end." De Jong did not see this letter nor did the Beaches discuss the loan with him.

In response to the Beaches' letter, the Bellinos raised the money to pay off the loan as agreed upon during the kitchen meeting. The Bellinos gave the money to Solario, who in turn purchased a cashier's check made payable to the Beaches in the amount of $94,438.38. This amount represented principal and accrued interest on the Beaches' loan to De Jong. Solario gave the cashier's check to the Beaches. On April 12, 2011, the Beaches transferred title solely to Solario. The Beaches did not inform De Jong about transferring the property to Solario. At trial, George Beach testified that he "transferred that property to Kim [Solario] without any regard for any interest Mr. De Jong might have in that property."

De Jong was unaware of any agreement to transfer ownership of the Escalon property to Solario. Likewise, De Jong was not aware of the transfer of ownership to Solario in April 2011. Instead, De Jong continued to pay the property taxes for the property. He also paid for maintenance costs of the property, including $8,000 to replace the air conditioning system in June 2011. Even after ownership of the Escalon property

8

transferred to Solario, De Jong was not informed of the transfer by the Beaches, Bellinos, or Solario.

De Jong first noticed that something was amiss in December 2011 when he saw a tax bill for the Escalon property with Solario's name on it. He confronted Solario – who was working for him at the time. She admitted to him that the property had been transferred to her in April 2011. Solario added, "No problem. We can put your name on title anytime you want. Don't worry. I'm not going to screw you out of your money." At the time, De Jong and Solario had an amicable relationship and he had entrusted her with the bookkeeping for his farming company. Solario testified that, at the time, she still loved him and believed he loved her too.

Shortly after January 1, 2012, De Jong and Solario discussed selling the Escalon property. They believed that "the market wasn't great right then" and decided to wait before listing the property for sale. De Jong continued to pay the property taxes on the Escalon property.

In the summer of 2012, De Jong spoke with Solario about listing the Escalon property for sale and they agreed that the time was right. Solario said that she would order a sign to be made that would advertise the house for sale. The sign never materialized, and De Jong became busy with the fall harvest. In December 2012, Judith Bellino wrote De Jong a check for $1,097.41 with the notation that was for "25% property tax" on the Escalon property. De Jong did not deposit the check because it overstated Solario's interest in the property by 5 percent.

After the harvest was completed, De Jong spoke with Solario and Lisa Steves, a real estate agent, about selling the property. Steves agreed to list the property for Solario. And Solario agreed that Steves could share information about efforts to sell the property with De Jong. Steves understood from De Jong and Solario that he was owed some amount of money that would be realized from the sale of the property.

9

### *The Lot Line Adjustment*

During the time that the Bellinos owned both the Escalon property and the adjacent property, they built a large storage shed over the boundary between the two properties. De Jong's expert witness testified that the shed was not code-compliant and probably not permitted. The shed was worth approximately $16,000 based its age and construction. Lisa Spencer, who worked with the real estate agent who would ultimately sell the Escalon property, testified that the shed likely did not affect the sales price at all.

In May 2013, Judith Bellino paid for adjustment of the lot line to the Escalon property. The lot line adjustment was necessary in order to sell the Escalon property. The Escalon property had originally been one acre. To preserve the one-acre size, the property underneath the shed was annexed to the Escalon property while another side of the property was ceded back to the Bellinos.

The Escalon property did not sell in 2013. Around January 2014, Solario decided to take the property off the market without consulting De Jong. At that time, Solario stopped communicating with De Jong. De Jong became concerned about his interest in the Escalon property and handed Solario a draft deed to transfer title to him. In February 2014, Solario told De Jong that she would talk to her attorney about the draft deed and said she was not going to sign the document. However, Solario did represent that she was "trying to get [him his] money back." However "she didn't want to talk about numbers with [De Jong]" and that "she was the one that had to figure out what was fair." The exchange became heated.

In deposition testimony introduced at trial, Solario stated that she "did not think or presume him to be an owner of the property." When asked the reason for this opinion, Solario answered: "I don't know how to answer that. I did not think of him as the owner of the property." Regarding the February discussion about Solario signing the draft deed, she acknowledged: "I did not respond well." She confirmed refusing to convey title to

10

De Jong. When asked the reason for her refusal, Solario stated: "No reason. Why would I?"

On March 13, 2014, De Jong placed a telephone call to Nicola Bellino in an effort to get the Escalon property sold by lowering the asking price. Nicola Bellino asked De Jong to "go ahead and put your numbers together" for further discussion. De Jong and Nicola Bellino spoke again on March 17, 2014. Nicola Bellino said that he did not want to hear about the numbers and would work to return De Jong's original investment. De Jong pointed out that there was additional equity. Nicola Bellino then "got mad, and there was no more talking about it."

A month later, De Jong's father was diagnosed with cancer. De Jong began taking care of his father. In June 2014, De Jong got married because he wanted his father to see him get married. De Jong's father died on July 14, 2014.

In June 2014, Solario listed the property for sale with a new real estate agent, Timothy Spencer. Solario did not tell De Jong that she was relisting the property for sale. At some point prior to the close of escrow, the Bellinos determined that they wanted to receive $150,000 from the sale of the Escalon property. The Bellinos presented this number to Solario, who agreed to pay them the amount out of escrow. The $150,000 was for money repaid to the Beaches, the lot line adjustment, and "all the work that came into play to move the lot line into the 1-acre parcel and include the [shed]." Solario testified at trial that there was no discussion with De Jong about this agreement. In listing the property for sale with Spencer, Solario signed a seller property questionnaire stating that there was another person on title to the property or who had a claim to ownership other than her. The Escalon property sold on July 28, 2014, for $610,000. The Bellinos were paid $150,000 out of escrow. Solario received $425,684.87 from the sale. Solario used $361,163.40 to purchase a residential property located in Ripon, California.

Solario did not tell De Jong about the sale of the Escalon property, and he received nothing out of escrow. De Jong first learned that the Escalon property had been sold

11

when someone told him that he or she saw a "sold sign" in the front yard. The next day, De Jong attempted to talk to Solario about the sale. Despite repeated efforts, De Jong was unable to secure any kind of response from Solario.

### *Bench Trial Phase One: Defendants Liable for Compensatory and Punitive Damages*

Approximately two weeks after De Jong learned that the Escalon property had been sold, he sued appellants and Solario. De Jong filed a first amended complaint (the operative complaint) in November 2014. The operative complaint asserted causes of action against the Beaches for breach of fiduciary duties, negligence, breach of contract, money lent, money had and received, and unjust enrichment. The complaint asserted claims against the Bellinos for money had and received, unjust enrichment, and avoidance of fraudulent transfers. The operative complaint also alleged that "each of the defendants . . . was the agent or co-conspirator of each of the remaining defendants, and in doing the things herein alleged, each of the defendants was acting within the course and scope of that agency or conspiracy with the knowledge, consent, or ratification of the remaining defendants." The operative complaint requested compensatory and punitive damages against all defendants.

The case proceeded to a bench trial that was bifurcated into two phases: The first phase concerned the defendants' liability for compensatory and punitive damages as well as the amount of compensatory damages. The second phase of the bench trial addressed the amount of punitive damages owed by the defendants.

The first phase of trial culminated with the issuance of a 24-page statement of decision in which the trial court found the Beaches, Bellinos, and Solario liable for compensatory and punitive damages. The trial court made findings, including the following pertinent facts: The Beaches breached their fiduciary duties to De Jong by secretly transferring the Escalon property to Solario. Solario, in turn, breached her duties to De Jong by secretly selling the Escalon property to a third party and retaining the

12

proceeds for herself and parties other than De Jong. Each of the defendants conspired with one another and aided and abetted each other in their conduct toward De Jong. Specifically, the defendants "collectively agreed amongst themselves on a purchase price for the Escalon Property, which was less than twenty-two percent (22%) of then-fair market value." To this end, the Bellinos provided funds to Solario "for the purpose of inducing Mr. and Mrs. Beach to transfer the Escalon Property to Ms. Solario, in breach of their duties to Mr. De Jong; that Ms. Solario paid those funds to Mr. and Mrs. Beach for that purpose; that Mr. and Mrs. Beach accepted the funds for that purpose; and that the Defendants carried out the transfer of the Escalon Property in secret, without informing or obtaining the consent of Mr. De Jong, whom the Defendants all knew held an interest in the Escalon Property, with the intent to hide that transaction from Mr. De Jong."

Based on these facts, the trial court additionally found the defendants liable for negligence and conversion. The Bellinos and Solario were found liable for money had and received, and for unjust enrichment. In light of these findings, the trial court dismissed additional causes of action asserted against the defendants as moot.

The trial court determined that De Jong was entitled to punitive damages based on clear and convincing evidence that each of the defendants engaged in conduct that "was despicable and was carried on with willful and conscious disregard of Mr. De Jong's rights in the Escalon Property, with which they were each well aware, and was thus malicious within the meaning of Civil Code section 3294[, subdivision ](c)(1)."

The trial court expressly rejected the defendants' affirmative defenses of judicial estoppel, unclean hands, statute of limitations, and the assertion that De Jong gifted the property to Solario. Thus, the trial court held defendants jointly and severally liable to De Jong in the amount of $460,663.03 plus postjudgment interest of 7 percent.

13

### *Order Awarding Costs-of-proof to De Jong*

After the trial court entered an interlocutory judgment holding defendants liable for compensatory and punitive damages, De Jong moved for costs-of-proof under section 2033.420.**2** In his motion, De Jong sought attorney fees against Solario for her refusal to admit 11 key facts, against George Beach for his refusal to admit 8 key facts, against Susan Beach for her refusal to admit 4 key facts, and against the Bellinos for refusing to admit 7 key facts. The defendants opposed the motion. The trial court ordered that defendants jointly pay $189,532.50 in costs-of-proof to De Jong. Appellants timely filed notices of appeal from the order granting costs-of-proof.

### *Bench Trial Phase Two: Amount of Punitive Damages*

The second phase of trial commenced on October 10, 2017. This phase of trial culminated with the trial court awarding De Jong punitive damages against Solario in the amount of $20,000, against the Beaches individually and collectively in the amount of $100,000, and against the Bellinos individually and collectively in the amount of $750,000. The trial court also awarded De Jong sole ownership of the Ripon property.

In imposing punitive damages on the Beaches, the trial court made the following findings: "Particularly aggravating the reprehensibility of his conduct, Mr. Beach communicated with the other defendants in secret many times over a long period to agree to and deliberately carry out the transfer of valuable real property that Mr. Beach held in trust for the benefit of Mr. De Jong to Kim Solario, without Mr. De Jong's knowledge or consent, and with utter disregard for his rights in that property or for the impact that the transfer may have on Mr. De Jong's physical or emotional health or well-being." "Mrs. Beach owed the same duties to Mr. De Jong that her husband did, and Mrs. Beach

---

**2**    We grant De Jong's request for judicial notice, filed in appeal No. C085462, of the record in appeal No. C086926. (Evid. Code, §§ 452, subd. (d), 459, subd. (a); *People v. Jenan* (2007) 148 Cal.App.4th 1144, 1145, fn. 1.)

14

participated in the same course of conduct with regard to the disposition of Mr. De Jong's property, likewise demonstrating complete disregard for Mr. De Jong's rights and for the impact that the transfer of Mr. De Jong's property to Ms. Solario may have on Mr. De Jong."

As to Solario, the trial court found that punitive damages were warranted because "Solario repeatedly lied to Mr. De Jong about her plans for the Escalon Property, concealed both the acquisition of the Escalon Property and its sale from him, and deliberately sold that property and kept the proceeds despite knowing of his interest therein." As to the Bellinos, the trial court found that both Nicola and Judith Bellino were "personally aware of Mr. De Jong's interest in the Escalon Property and his claim thereto," that they "met in secret with the other defendants to plan and carry out the transfer of that property to [their] daughter, Kim Solario, which [they] facilitated by providing the money she used to purchase that property. [They] subsequently assisted her in selling the property, agreeing in advance to receive money that belonged to Mr. De Jong from the sale of that property, and did so with knowledge or, certainly, with reason to know that Ms. Solario intended to keep the balance of the proceeds of the Escalon Property and not pay Mr. De Jong." The trial court further found both of the Bellinos were "aware of Mr. De Jong's vulnerability and conspired with and aided and abetted Ms. Solario in exploiting it," and that their "participation in the aforementioned course of conduct spanned a long period of time."

The Beaches and Bellinos timely filed a notice of appeal. The Beaches and Bellinos filed a separate notice of appeal from a postjudgment order awarding costs to De Jong in the amount of $25,910.75.

I

*The Beaches' Fiduciary Duty to De Jong*

The Beaches contend the trial court erred as a matter of law in determining that trustees owe a fiduciary duty under a resulting trust. Thus, they argue that they owed no fiduciary duty to De Jong under the resulting trust for the Escalon property. We disagree.

**A.**

*Trial Court Statement of Decision*

In its statement of decision, the trial court determined that a resulting trust arose in the Beaches' acquisition of title to the Escalon property. The trial court reasoned, "Once the sale closed, Mr. and Mrs. Beach held title to the Escalon Property in a resulting trust for the benefit of Mr. De Jong to the extent of his interest therein . . . . As resulting trustees, Mr. and Mrs. Beach owed duties to Mr. De Jong to hold the Escalon Property for his benefit and ultimately to convey it to him. Mr. and Mrs. Beach breached that duty by instead selling the Escalon Property in April 2011 to Ms. Solario—with whom he was no longer living or sharing a romantic relationship by that time—for a sum sufficient to repay Mr. and Mrs. Beach's 'loan' with interest, without Mr. De Jong's knowledge or consent and without taking any action to memorialize or protect Mr. De Jong's interest. The sale was made for a price that was a mere fraction of fair market value. Mr. De Jong was not paid his equitable share of the fair market value of the property, or even of the actual sale price—indeed, he was not paid anything."

Regarding fiduciary duties owed to De Jong, the trial court found "that each of the Defendants conspired to breach the fiduciary duties owed by Mr. and Mrs. Beach and by Ms. Solario to Mr. De Jong. The Court finds, inter alia, that each of the Defendants intended, planned, and agreed that Mr. and Mrs. Beach would sell the Escalon Property to

16

Ms. Solario in secret, in breach of their duties to Mr. De Jong, in consideration for a price sufficient only to repay Mr. and Mrs. Beach's 'loan' . . . ." (Italics omitted.) As to the Beaches, the trial court found that their breach of their fiduciary duties to De Jong served as a basis for compensatory and punitive damages. The trial court's statement of decision reiterated that the Beaches' "breaches include, without limitation, their transfer of the Escalon Property to Ms. Solario without Mr. De Jong's knowledge or consent and without memorializing or protecting his interest therein."

## B.

### *Resulting Trust*

California has long recognized that trusts impose fiduciary duties on trustees. "A trust is a fiduciary relationship with respect to property in which the person holding legal title to the property—the trustee—has an equitable obligation to manage the property *for the benefit of another*—the beneficiary. (*In re Estate of Shaw* (1926) 198 Cal. 352, 360; *Askew v. Resources Funding, Ltd*. (1979) 94 Cal.App.3d 402, 407; Rest.2d Trusts, § 2.) A trustee must always act solely in the beneficiaries' interest. ([Prob. Code,] § 16002, subd. (a); *Estate of Feraud* (1979) 92 Cal.App.3d 717, 723.) If the trustee violates any duty owed to the beneficiaries, the trustee is liable for breach of trust. ([Prob. Code,] § 16400.)" (*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1133-1134.)

A trust may be express or resulting – depending on whether the trust's creation is express or inferred. (*Askew v. Resources Funding, Ltd*. (1979) 94 Cal.App.3d 402, 407.) A resulting trust arises by operation of law, without the express intent of the settlor, when transfer of real property is made to one person but paid for by another. (*In re Marriage of Ruelas* (2007) 154 Cal.App.4th 339, 342, overruled on another ground in *Conservatorship of O.B*. (2020) 9 Cal.5th 989, 1010, fn. 7.) " 'The trust that is "presumed to result" from this situation is termed a "resulting trust"; its purpose is to enforce the intentions of the parties. It is distinguished from a constructive trust, which is

17

typically imposed to rectify fraudulent behavior.' (*Johnson v. Johnson* (1987) 192 Cal.App.3d 551, 556.)" (*Ruelas,* at p. 342.)

Notably, "[t]he terms 'constructive trust' and 'resulting trust' have often been confused by attorneys, as well as some courts. (*Kraus v. Willow Park* [*Public Golf Course* (1977)] 73 Cal.App.3d [354,] 373; see 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 704, p. 2326; 5 Scott on Trusts [(3d ed. 1967)] § 462.1, p. 3416.) Both are involuntary trusts implied by law and exempt from the statute of frauds. (See Civ. Code, § 852.) However, ' "[a] resulting trust arises from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest . . . . [¶] It has been termed an 'intention-enforcing' trust, to distinguish it from the other type of implied trust, the constructive or 'fraud-rectifying' trust. The resulting trust carries out the inferred intent of the parties; the constructive trust defeats or prevents the wrongful act of one of them." ' (*American Motorists Ins. Co. v. Cowan* (1982) 127 Cal.App.3d 875, 884-885.)" (*Martin v. Kehl* (1983) 145 Cal.App.3d 228, 238.)

## C.

### *The Beaches' Fiduciary Relationship*

The Beaches do not contest the trial court's determination that their purchase of the Escalon property with funds received from De Jong gave rise to a resulting trust. Instead, the Beaches contend that a resulting trust "is not a true trust for purposes of creating a fiduciary relationship." Thus, the Beaches argue that they did not owe any fiduciary duties to De Jong despite their receipt of funds for the purchase of the Escalon property from him. We reject the argument.

The trial court did not err finding that the Beaches breached their fiduciary duty to De Jong by transferring title in the Escalon property solely to Solario without any regard for De Jong's ownership interest in the property. Under the resulting trust for the Escalon property, the Beaches had a fiduciary duty to De Jong even if that fiduciary duty had a

limited scope. "[T]he relationship between resulting trustee and beneficiary arises where one, in good faith, acquires title to property belonging to another. . . . The trustee has no duties to perform, no trust to administer, and no purpose to pursue except *the single purpose of holding or conveying the property according to the beneficiary's demands*." (*Estate of Yool* (2007) 151 Cal.App.4th 867, 874, italics omitted & added.) While the Beaches did not have an obligation to manage the Escalon property for De Jong, they did have the obligation to hold title to the property for De Jong's benefit or transfer title according to his demand. (*Ibid.*) By transferring title to the Escalon property without regard for De Jong's interest, the Beaches breached their fiduciary duty to him.

We reject the Beaches' argument that they had no fiduciary relationship with De Jong based on their assertion that it "is undisputed that DeJong [*sic*] had no discussions whatsoever with the Beaches before they received title or about eventually transferring title to DeJong [*sic*]." The absence of direct communications between the Beaches and De Jong did not excuse the Beaches from their fiduciary obligation to De Jong. Under the resulting trust, the "law *implies* an obligation on the part of the one in whom title has vested to hold the property for the owner's benefit and eventually convey it to the owner." (*Estate of Yool*, *supra*, 151 Cal.App.4th at p. 874, italics added.) Thus, the Beaches breached their fiduciary duties when they conveyed the Escalon property to Solario without any consideration for De Jong's interest.[3]

We also reject the Beaches' reliance on Probate Code section 82, subdivision (b)(1). Probate Code section 82 supplies a definition of term "trust" that excludes resulting trusts as well as some types of constructive trusts. The applicability of Probate Code section 82's definition of "trust," however, is expressly limited by Probate Code

---

[3] Accordingly, we also reject the defendants' arguments elsewhere in their opening brief that the trial court erred in holding them liable despite their asserted lack of fiduciary duty to De Jong.

19

section 20. Section 20 provides that "the definitions in this part govern the construction *of this code*." (Italics added.) This case does not involve a claim that arises under the Probate Code. Consequently, the definitional limitations of Probate Code section 82 do not apply here.

We are not persuaded by the Beaches' reliance on *Richman v. Green* (1956) 143 Cal.App.2d 470. The *Richman* court held that, under a resulting trust, "[t]he trustee has no duties to perform, no trust to administer, and no purpose to carry out *except the single one of holding or conveying according to the beneficiary's demand*." (*Id.* at p. 473, italics added.) In this case, the Beaches breached this duty. Indeed, the trial court found that the Beaches intentionally and maliciously breached their duty to De Jong when they conveyed title in the Escalon property to Solario. Thus, *Richman* confirms that the Beaches' conduct violated their fiduciary duty under the resulting trust for which De Jong was the beneficiary. The trial court did not err in determining that the Beaches breached their fiduciary duty to De Jong to hold and convey title to the Escalon property for his benefit.

## II

### *Mitigation of Damages*

The Beaches next argue that De Jong failed to mitigate his damages. This argument is not properly presented under a heading that discloses the nature of the contention. Moreover, the argument is unaccompanied by record citations relating to any facts that appellants might believe support their mitigation of damages contention.

As this court has previously admonished, "An appellant must '[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority.' (Cal. Rules of Court, rule 8.204(a)(1)(B); see *Opdyk v. California Horse Racing Bd*. (1995) 34 Cal.App.4th 1826, 1830-1831, fn. 4.) Failure to provide proper headings forfeits issues that may be

20

discussed in the brief but are not clearly identified by a heading." (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179.)

The Beaches' vague statement that "DeJong [*sic*] is barred by numerous equitable and legal doctrines from obtaining any relief from the Beaches," does not inform this court that they intend to advance an argument about mitigation of damages. Instead, the argument is buried in a section that also includes an unheralded argument about De Jong's purported ratification of the Beaches' conduct. Here, the lack of proper heading means that multiple arguments are lumped together and require guesswork as to the exact grounds on which the Beaches believe they are entitled to a reversal. "The strength and wisdom of this rule [requiring proper headings] is that it nudges and cajoles the brief writer into focusing and specifying the precise reason we must reverse the trial court's action." (*Pizarro v. Reynoso*, *supra*, 10 Cal.App.5th at p. 180.)

The guesswork necessary is compounded by the Beaches' lack of citation to the appellate record in support of their mitigation of damages argument. Specifically, the Beaches do not provide record support for any facts they believe to support their assertion that De Jong did not properly mitigate his damages. "When an appellant's brief makes no reference to the pages of the record where a point can be found, an appellate court need not search through the record in an effort to discover the point purportedly made. (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1117, fn. 2; [citations].) We can simply deem the contention to lack foundation and, thus, to be forfeited." (*In re S.C.* (2006) 138 Cal.App.4th 396, 406-407.)

## III

### *Ratification Through Acquiescence*

The Beaches argue that De Jong ratified their conduct through his acquiescence. Specifically, the Beaches assert that, "[d]espite knowing that title had been transferred, DeJong [*sic*] admittedly did nothing for more than two years before first demanding that

Solario put him on title."  This issue has not been preserved for appeal because appellants did not argue the defense of posttransfer ratification during trial.

## A.

### *Testimony Regarding De Jong's Consent or Acquiescence to Transfer of Title*

During trial, appellants did not attempt to prove the defense of posttransfer ratification.  Instead, appellants testified that De Jong was personally present during the kitchen meeting at the Escalon property and that he consented to the transfer of title to Solario.  Thus, appellants' posttrial brief focused their proof of De Jong's presence at the kitchen meeting.  Neither at trial nor in their posttrial brief did appellants advance a defense premised on De Jong's alleged posttransfer ratification.

The trial court determined that appellants' testimony was not credible regarding De Jong's presence during the kitchen meeting or his acquiescence to transfer of title.  The trial court found appellants "collectively met in person outside of Mr. De Jong's presence and without his knowledge to plan the transfer of the Escalon property to Ms. Solario in exchange for payment of Mr. and Mrs. Beach's loan."  The trial court further found that "Mr. De Jong did not consent to the transfer.  Mr. De Jong did not know, and did not have reason to suspect, that the transfer had taken place until December 2011, when he discovered that the name on the invoice for the property taxes assessed against the Escalon Property had been changed from Mr. and Mrs. Beach to Ms. Solario.  The [appellants'] contrary testimony that Mr. De Jong knew of the transfer beforehand and consented to it was not credible."

## B.

### *Ratification*

As the California Supreme Court has explained, "Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to

22

treat the act as if originally authorized by him." (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73.) Ratification may be express or implied. (*Ibid.*) The defense that a plaintiff has ratified a voidable contract presents a question of fact for which the defendant bears the burden of convincing the trier of fact. (*Bank of America Nat'l Trust & Sav. Asso. v. Lamb Finance Co.* (1956) 145 Cal.App.2d 702, 719-720.) " ' "Ratification of a fraudulent transaction can only be made where there is a full knowledge of the facts constituting the fraud [citation] and depends primarily on the intention of the party as shown by his declarations, acts and conduct [citation]." ' " (*Id.* at p. 720.) Thus, the question of whether a party has ratified a fraudulent contract presents a question for the trier of fact. (*Common Wealth Ins. Systems, Inc. v. Kersten* (1974) 40 Cal.App.3d 1014, 1024, 1026.)

In reviewing the factual findings of the trial court, we apply the substantial evidence standard of review. (*Jameson v. Five Feet Restaurant, Inc*. (2003) 107 Cal.App.4th 138, 142-143.) " 'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.' (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874.) The substantial evidence standard of review is applicable to appeals from both jury and nonjury trials." (*Id.* at p. 143, italics omitted.)

*Evidence Regarding Ratification*

Appellants' argument that De Jong ratified the fraudulent transfer sometime after he learned about it in 2011 represents a notable retreat from their position at trial. During trial, appellants and Solario testified that De Jong was personally present during the kitchen meeting and acquiesced to the transfer at that point in January 2011. Appellants also attempted to prove that he gifted the Escalon property to Solario. The trial court, however, rejected the credibility of the testimony that De Jong was present during the kitchen meeting. And the trial court rejected the assertion that De Jong gifted his interest in the Escalon property to Solario. In its statement of decision, the trial court found that De Jong did not consent to the transfer to Solario either during the time that the appellants secretly formulated their plan to confer title to her or after De Jong found out about the transfer.

Substantial evidence supports the trial court's factual findings. De Jong testified that he was not present during the kitchen meeting and did not know about the plan to transfer title to Solario. De Jong further testified that he did not actually learn about the transfer until December 2011, when he saw that the addressee for the property tax invoice had been changed to Solario. De Jong could not have ratified a transfer of title of which he was unaware.

After De Jong learned of the transfer through the property tax bill, he promptly confronted Solario and secured a promise to "put him on title whenever he wished." Solario also assured him that he would be paid his interest when the property was sold. It was not until 2014 that Solario stopped cooperating and communicating with De Jong. When De Jong found out that the Escalon property had been sold, he went to confront her the very next day. He filed this action against appellants and Solario approximately two weeks later. Rather than showing ratification of the transfer of title to Solario, De Jong

consistently acted to protect his interest in the Escalon property in all of his communications with Solario. We reject appellants' contention that De Jong ratified the transfer to Solario.

## IV

### *Statute of Limitations for Negligence*

Appellants next argue that the trial court erred in determining that De Jong's cause of action for negligence was timely because appellants were estopped to assert the statute of limitations. In its statement of decision, the trial court found that appellants were estopped from asserting the statute of limitations as to the claim of negligence. As a separate basis for rejecting the appellants' statute of limitations defense, the trial court found that the accrual of the statute of limitations for the negligence claim was equitably tolled. However, appellants' opening brief does not address this separate equitable tolling finding by the trial court. Accordingly, we affirm on this unchallenged, alternate ground.

The negligence cause of action related to the April 2011 transfer of the Escalon property by the Beaches. Regarding the appellants' statute of limitations defense, the trial court found as follows: "Mr. De Jong did not know of or have reason to suspect the existence of any cause of action until December 2011 at the earliest. His action was filed less than three years later, and consequently his causes of action for breach of fiduciary duty and conversion are timely. Each of his causes of action arising out of the July 2014 sale of the Escalon Property are also well within the statute of limitations and are timely. With respect to his other causes of action against Mr. and Mrs. Beach arising from the April 2011 transfer of the Escalon Property, the running of *the statute of limitations was tolled, and the Defendants were estopped to assert it*, until February 2014, as Ms. Solario continued to affirmatively recognize Mr. De Jong's interest in the Escalon Property until that time and continued until that time to represent that he would be paid when the

25

Escalon Property was sold, and Mr. De Jong reasonably relied upon those representations." (Italics added.)

As the italicized portion of the statement of decision shows, the trial court found that the causes of action relating to the April 2011 transfer (including the negligence claim) were timely because of equitable tolling *and* equitable estoppel. Thus, the trial court found two separate bases for rejecting the statute of limitations defense because equitable tolling and equitable estoppel are distinct from each other. (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 383-384.) In *Lantzy*, the Supreme Court explained: " ' "Tolling, strictly speaking, is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the limitations period may be suspended. . . . Equitable estoppel, however, . . . comes into play only after the limitations period has run and addresses . . . the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." ' " (*Id.* at p. 383, ellipses added by *Lantzy*.)

On review, we may affirm the trial court's judgment on any correct legal ground supported by the record. (*Taylor v. Elliott Turbomachinery Co. Inc*. (2009) 171 Cal.App.4th 564, 573, fn. 5.) Here, appellants' opening brief does not address the equitable tolling rationale employed by the trial court. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [holding that issues not raised in an appellant's opening brief are deemed abandoned].) Accordingly, we reject appellants' contention for lack of prejudice because a single valid basis is sufficient to affirm the trial court's decision. (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376; *Waller v. TJD, Inc*. (1993) 12 Cal.App.4th 830, 833.)

26

# V

## *Fraudulent Transfer*

The Bellinos argue that the trial court erred as a matter of law in holding them liable for fraudulent transfer, money had and received, and unjust enrichment. In particular, they challenge the trial court's finding that "Solario transferred $150,000 in sale proceeds from the [Escalon] property through escrow to the Bellinos 'with intent to hinder, defraud, and delay payment to Mr. DeJong [*sic*].' " To support their argument, the Bellinos engage in a detailed analysis of the evidence introduced at trial that shows the gravamen of their appellate argument to be a substantial evidence challenge. Their argument depends on inflating the value of the encroaching shed above the $11,000 valuation settled upon by the trial court. Viewing the evidence in the light most favorable to the judgment, we conclude that the evidence supported the trial court's determination.

## A.

## *Transfer of $150,000 to the Bellinos*

The trial court found that Solario received title to the entirety of the Escalon property even though her equitable interest was only 19.98 percent. The remaining 80.02 percent belonged to De Jong. The trial court further found that "Ms. Solario's equitable share of the sale proceeds was $115,021.84 after costs of sale. However, pursuant to a prior agreement with Mr. and Mrs. Bellino, made without Mr. De Jong's knowledge, Ms. Solario paid Mr. and Mrs. Bellino $150,000.00 from the proceeds of the sale of the Escalon Property directly out of escrow. That payment exceeded Ms. Solario's entire equitable share of the sale proceeds by at least $34,978.16." On this basis, the trial court determined that the $34,978.16 difference represented a fraudulent transfer to the Bellinos.

**B.**

### *Reasonably Equivalent Value for Transfer*

The Bellinos argue that Solario received approximately $115,000 in value for the Escalon property before she transferred $150,000 of the sale proceeds to the Bellinos. The Bellinos formulate their $115,000 estimate by adding the $11,000 value of the shed, the $9,000 they paid for a lot line adjustment, and $94,438.38 for repayment of the Beaches' loan. On these figures, the Bellinos argue that "Solario thus received reasonably equivalent value for her transfer" so that the transfer was not fraudulent. We are not persuaded.

We determine that the Bellinos are unable to muster legal authority establishing that proof of reasonably equivalent value would provide them with a defense for their fraud against De Jong. In making this determination, we reject as inapposite the Bellinos' reliance on four federal bankruptcy opinions: *In re Pringle* (Bankr. 9th Cir. 2013) 495 B.R. 447 (*Pringle*), *In re AFI Holding, Inc*. (Bankr. 9th Cir. 2008) 525 F.3d 700 (*AFI*), *In re Alpha Medical Center Partners, LLC* (Bankr. S.D. Cal., Nov. 3, 2011, 06-00062-B11) 2011 WL 5417088 (*Alpha Medical*), and *In re Carbaat* (Bankr. N.D. Cal. 2006) 357 B.R. 553 (*Carbaat*). Each of these four cases focused on the application of section 548 of title 11 of the United States Bankruptcy Code. (*Pringle*, at p. 455; *AFI*, at p. 704; *Alpha Medical*, at p. *1; *Carbaat*, at p. 558.) This section of the United States Bankruptcy Code allows *bankruptcy trustees* to void transfers by debtors who intend to avoid their obligations to their creditors by receiving less than a reasonably equivalent value in exchange for such transfer. (11 U.S.C. § 548(a)(1)(B)(i).) This federal statute does not apply to this case, which is not a bankruptcy proceeding and does not involve the participation of a bankruptcy trustee.

The cases of *AFI*, *Alpha Medical*, and *Carbaat* also involve the application of a corollary statute, California Civil Code section 3439.04. (*AFI*, *supra*, 525 F.3d at p. 706;

*Alpha Medical*, *supra*, 2011 WL 5417088 at p. *2; *Carbaat*, *supra*, 357 B.R. at p. 558.)

Similar to the function of section 548 of title 11 of the United States Bankruptcy Code, Civil Code section 3439.04, subdivision (a), provides that "[a] transfer made or obligation incurred by a *debtor* is voidable as to a *creditor*, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation" as specified. (Italics added.) Section 3439.04 is part of the Uniform Voidable Transactions Act (UVTA). (Civ. Code, § 3439.) As this court has previously explained, "[a] fraudulent conveyance under the [(UVTA)] involves ' "a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." ' " (*Filip v. Bucurenciu* (2005) 129 Cal.App.4th 825, 829, quoting *Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 648.)

In this case, Solario and De Jong did not stand in a debtor-creditor relationship for which the provisions of the UVTA or section 548 of title 11 of United States Bankruptcy Code apply. Solario did not transfer $150,000 to the Bellinos to avoid payment on a debt she incurred with De Jong. Instead, Solario received and transferred value from the Escalon property as the product of a secret conspiracy against De Jong's interest in the property.

## VI

### *Deficiency in Pleading*

Appellants argue that deficiencies in De Jong's pleadings require reversal of the trial court's determinations that they are liable for conspiracy, aiding and abetting each other, and for "unasserted causes of action." Appellants identify these "unasserted causes of action" as the claims asserted in the operative complaint "for breach of fiduciary duty, negligence, and conversion against the Bellinos, and conversion against the Beaches." We conclude the alleged errors are harmless.

**A.**

**"Unasserted Causes of Action"**

We first address appellants' contention that they were erroneously held liable on unasserted causes of action for which they were not individually named in the operative complaint.

**1.    *Multiple Bases of Liability for the Beaches and Bellinos***

In its statement of decision, the trial court held the Beaches liable for (1) breach of fiduciary duty to De Jong based on resulting trust, (2) conspiring with the other appellants for breach of their duties to De Jong based on aiding and abetting, (3) negligence in failing to protect De Jong's interest in the Escalon property, (4) conversion, and (5) punitive damages for despicable conduct.

The Bellinos were held liable for (1) conspiring with the other appellants for breach of their duties to De Jong based on aiding and abetting, (2) negligence in failing to protect De Jong's interest in the Escalon property, (3) fraudulent transfer, (4) money had and received, (5) unjust enrichment, and (6) punitive damages for despicable conduct.

**2.    *Alternate Bases for Liability***

We begin our review with the presumption that the trial court's decision is correct. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)  As a corollary, a single valid basis for the trial court's decision is sufficient for an affirmance even if an alternate basis for the decision fails.  "Where an appeal is taken from such a judgment the reviewing court has the power to disregard particular theories and findings and to affirm the judgment on a theory which is supported by the finding and evidence in order that causes may be disposed of by a single appeal and without further proceedings in the trial court." (*Crogan v. Metz* (1956) 47 Cal.2d 398, 403.)  Where a trial court states "a primary basis and an alternative and independent basis for its award, the alleged invalidity of its alternative basis does not invalidate the award unless the primary basis

30

was invalid." (*Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 449, fn. 11.) Where one basis is valid, we do not need to address the validity of the alternative basis. (*Ibid.*) This is because "[w]hen the trial court commits error in ruling on matters relating to pleadings, procedures, or other preliminary matters, reversal can generally be predicated thereon only if the appellant can show resulting prejudice, and the probability of a more favorable outcome, at trial." (*Waller v. TJD, Inc., supra*, 12 Cal.App.4th at p. 833, italics omitted.)

### 3. *Recovery Under a Single Valid Basis for Liability*

A plaintiff is allowed to plead multiple alternative causes of action arising out of a single injury. (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1388.) Even so, a plaintiff may recover only once for a particular injury. " 'Regardless of the nature or number of legal theories advanced by the plaintiff, he [or she] is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence. [Citation.] Double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited.' " (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 702, quoting *Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1158-1159.) A plaintiff's recovery for a particular injury must be the same regardless of whether the plaintiff has proven one or more causes of action arising out of that injury.

Here, appellants challenge the sufficiency of the pleading for conversion against the Beaches. However, they do not challenge the sufficiency of the pleadings in alleging causes of action against the Beaches for breach of fiduciary duties, negligence, money lent, or money had and received. The trial court found the Beaches liable for the claims of breach of fiduciary duty and negligence. Based on the multiple and redundant bases for liability, the trial court dismissed as moot the additional causes of action, including those for breach of contract, money had and received, and money lent. In the same way, the possibility that the pleadings were not sufficient to allege a cause of action for conversion against the Beaches does not undermine the unchallenged sufficiency of the

31

pleadings against them for four additional causes of action. Because any one of these other four causes of action against the Beaches was sufficient to establish De Jong's claim that they acted wrongfully toward him in transferring title to Solario without regard for his interests, there is no prejudice arising out of possible deficiency in pleading a claim of conversion against the Beaches. (*Roby v. McKesson Corp*., *supra*, 47 Cal.4th at p. 702; *Waller v. TJD, Inc*., *supra*, 12 Cal.App.4th at p. 833)

For the same reason, we reject appellants' claims that the operative complaint did not sufficiently allege causes of action against them for breach of fiduciary duty, negligence, and conversion against the Bellinos. The operative complaint also alleged causes of action against them for fraudulent transfers, money had and received, and unjust enrichment. The trial court found the Bellinos liable for fraudulent transfers, money had and received, and unjust enrichment. The Bellinos do not challenge the sufficiency of the pleadings in the operative complaint insofar as it stated claims against them for fraudulent transfers, money had and received, and unjust enrichment. As with the Beaches, the unchallenged causes of action each support the award of damages for the Bellinos' wrongful conduct toward De Jong. Accordingly, there can be no prejudice arising out of deficient pleading of claims against the Bellinos for breach of fiduciary duty, negligence, or conversion.

## B.

### *Conspiracy and Aiding and Abetting*

As part of their argument regarding deficiencies in the operative complaint, appellants contend the complaint insufficiently alleged they engaged in a conspiracy or in aiding and abetting each other.

### 1. *Operative Complaint and Trial Court Argument*

The original complaint in this case pleaded that De Jong "is informed and believes and thereupon alleges that all times relevant to this Complaint, each of the defendants,

32

including those fictitiously named, was the agent or co-conspirator of each of the remaining defendants, and in doing the things herein alleged, each of the defendants was acting within the course and scope of that agency or conspiracy with the knowledge, consent, or ratification of each of the remaining defendants." The operative complaint in this case reiterated the identical allegation of conspiracy.

In his pretrial brief filed in the trial court, De Jong argued that "[t]he Bellinos were involved in this action from the beginning and aided, abetted, and conspired with Ms. Solario to cheat Mr. De Jong. They share jointly and severally in her liability." De Jong claimed damages against the Beaches on grounds that "[t]he Beaches also aided, abetted, and conspired with Ms. Solario and consequently share joint and several liability for her injury to Mr. De Jong." In his posttrial brief De Jong reiterated his claim of conspiracy by devoting a section to his conspiracy claim with the heading: "The defendants collectively conspired in, and aided and abetted one another in, the breach of their duties to Mr. De Jong."

## 2. *Sufficiency of the Pleading Regarding Conspiracy*

Conspiracy, by itself, does not constitute a cause of action. "To be actionable (conspiracy) the alleged combination must result in the commission of a civil wrong, either by the perpetration of an unlawful act or some injurious act by unlawful means, resulting in damage. (*Agnew v. Parks* (1959) 172 Cal.App.2d 756.) As stated in *Wise v. Southern Pacific Co*. (1963) 223 Cal.App.2d 50, 64, '. . . a conspiracy, in and of itself, however[] atrocious, does not give rise to a cause of action unless a civil wrong has been committed resulting in damage.' The major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." (*Younan v. Equifax Inc*. (1980) 111 Cal.App.3d 498, 508, citing *Mox Inc. v. Woods* (1927) 202 Cal. 675, fn. omitted.) As the California Supreme Court has held, "By participation in a civil conspiracy, a coconspirator

effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. ([*Wyatt v. Union Mortg. Co.* (1979) 24 Cal.3d 773, 784].) In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd*. (1994) 7 Cal.4th 503, 511.)

The allegation of a conspiracy to commit a specified wrongful act gives notice that coconspirators are each responsible as joint tortfeasors. " ' "The advantage to the pleader in charging a conspiracy is to implicate all participating in the common design and thus fasten liability on him who agreed to the plan to commit the wrong as well as on him who actually carried it out." ' " (*117 Sales Corp. v. Olsen* (1978) 80 Cal.App.3d 645, 649, quoting *Allen v. Powell* (1967) 248 Cal.App.2d 502, 508.)

Because a conspiracy "is simply a corrupt agreement," the requirements for pleading are simple. (*117 Sales Corp. v. Olsen*, *supra*, 80 Cal.App.3d at p. 649) "To state a cause of action for civil conspiracy, facts must be alleged which show the formation and operation of a conspiracy, the wrongful act of any of the conspirators thereto and damage resulting therefrom." (*Ibid.*) "To be entitled to a joint recovery of damages against the defendants for inflicting a wrong through a conspiracy, the plaintiff must allege and prove: a concert of action between the defendants to accomplish the purpose of the conspiracy; that their actions were illegal and in furtherance of a common scheme or design to achieve the unlawful purpose of the conspiracy; and their knowledge of the conspiracy and its unlawful purpose." (*James v. Herbert* (1957) 149 Cal.App.2d 741, 747.)

The operative complaint sufficiently pleaded a conspiracy by appellants and Solario to deprive De Jong of his interest in the Escalon property. Both the original and amended complaints prominently allege the conspiracy in a stand-alone paragraph. The operative complaint describes the agreement of defendants to act together and against De Jong's property interest. The operative complaint details the following: The Beaches transferred title to the Escalon property solely to Solario for a sum that was far below the

34

property's market value. Solario, in turn, gave some of the proceeds from the sale of the property to the Bellinos in an amount that exceeded that to which they were entitled. The Bellinos accepted the proceeds in bad faith with an intent to defraud De Jong. None of the defendants informed De Jong about the transfer to Solario before, during, or after the transfer of title. Instead, the defendants acted in a manner that was "fraudulent, malicious, and oppressive in nature . . . ." In short, the operative complaint painted a picture of a conspiracy by the Beaches, Bellinos, and Solario to realize the value of the Escalon property and divide it among themselves without regard to De Jong's interests.

In addition to the operative complaint, De Jong outlined his conspiracy allegations in pretrial briefing. In that briefing, De Jong stated that he intended to show that "[t]he Bellinos were involved in this action from the beginning and aided, abetted, and conspired with Ms. Solario to cheat Mr. De Jong. They share jointly and severally in her liability. [¶] . . . [¶] The Beaches also aided, abetted, and conspired with Ms. Solario and consequently share joint and several liability for her injury to Mr. De Jong." De Jong's posttrial briefing reiterates the allegations of conspiracy and emphasizes the defendants' agreement on a plan to appropriate De Jong's interest in the Escalon property. De Jong pointed out where in the reporter's transcript that the evidence showed "[t]he Beaches met with Ms. Solario outside of Mr. De Jong's presence to agree on a price for the Escalon Property and to transfer that property to Ms. Solario. Ms. Solario subsequently agreed in advance with her parents on an amount that they would receive from the sale of the Escalon Property."

In sum, De Jong's operative complaint and trial briefs clearly alleged a conspiracy by defendants to appropriate for themselves the interest he had in the Escalon property. On this record, the trial court did not err in determining that De Jong sufficiently pleaded that defendants were liable for their conspiracy against him.

### 3. *Sufficiency of the Pleading Regarding Aiding and Abetting*

Although closely related to conspiracy, aiding and abetting is a distinct theory for tort liability. (*Navarrete v. Meyer* (2015) 237 Cal.App.4th 1276, 1287, fn. 3.) " ' "Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." ' " (*Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 574, quoting *Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1325-1326.) As the court noted in *Richard B. LeVine*, "[t]he unifying principle under either theory of recovery, civil conspiracy or aiding and abetting, is that [the defendant's] liability depends upon the actual commission of a tort." (*Richard B. LeVine*, at p. 574.)

Here, De Jong's operative complaint expressly alleged that defendants were liable for aiding and abetting each other with the knowledge, consent, or ratification of each of the remaining defendants. As with the conspiracy allegations, the operative complaint detailed defendants' action in concert to transfer title from the Beaches to Solario with a portion of the value of the Escalon property to go to the Bellinos in excess of the sum to which the Bellinos were entitled. This action in concert was taken without informing De Jong. These allegations were amplified by De Jong's pretrial and posttrial briefing. In his trial briefs, De Jong confirmed his allegations that defendants acted in concert to deprive him of his lawful interest in the Escalon property. The pleadings were sufficient to apprise defendants of De Jong's aiding and abetting theory of liability.

# VII

## *Substantial Evidence Challenge to the Findings of Conspiracy and of Aiding and Abetting*

Appellants next argue that insufficient evidence supported the trial court's findings that they engaged in conspiracy and in aiding and abetting each other to deprive De Jong of his interest in the Escalon property. We conclude that the evidence amply supports the trial court's findings regarding conspiracy and aiding and abetting.

## A.

## *Substantial Evidence Standard of Review*

We review appellants' challenge to the sufficiency of evidence in support of the trial court's factual findings that they engaged in conspiracy and aided and abetted each other under the substantial evidence standard of review. "Substantial evidence is evidence that a rational trier of fact could find to be reasonable, credible, and of solid value. Under the substantial evidence standard of review, we view the evidence in the light most favorable to the judgment and accept as true all evidence tending to support the judgment, including all facts that reasonably can be deduced from the evidence, and must affirm the judgment if an examination of the entire record viewed in this light discloses substantial evidence to support the judgment." (*Mealy v. B-Mobile, Inc.* (2011) 195 Cal.App.4th 1218, 1223.) In assessing whether the record reveals substantial evidence in support of the judgment, "the appellate court will look only at the evidence supporting the prevailing party and will disregard the contrary showing; the evidence is not to be weighed by the appellate court: 'All of the evidence most favorable to the respondent must be accepted as true, and that unfavorable discarded as not having sufficient verity, to be accepted by the trier of fact. If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed.' " (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872, quoting *Estate of Teel* (1944) 25 Cal.2d 520, 527.)

**B.**

*The Conspiracy Regarding De Jong's Interest in the Escalon Property*

Civil conspiracy requires a plaintiff to prove an agreement and action by two or more persons to commit a tortious act against the plaintiff. (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1582.) " 'The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design.' " (*Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 44, quoting *Mox Inc. v. Woods, supra*, 202 Cal. at pp. 677-678.) Thus, proof of a civil conspiracy requires a plaintiff to prove "that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it. ([*Hinkle v. City of Clarksburg* (4th Cir. 1996) 81 F.3d 416,] 421.) It is not enough that the conspiring officers knew of an intended wrongful act, they had to agree—expressly or tacitly—to achieve it. Unless there is such a meeting of the minds, ' "the independent acts of two or more wrongdoers do not amount to a conspiracy." ' (*National Congress P.R. Rights v. City of New York* (S.D.N.Y. 1999) 75 F.Supp.2d 154, 168.)" (*Choate v. County of Orange* (2000) 86 Cal.App.4th 312, 333.)

Civil conspiracies frequently involve secret agreements. (See, e.g., *Anderson v. Thacher* (1946) 76 Cal.App.2d 50, 72; *Rosenthal v. Gould* (1969) 273 Cal.App.2d 239, 244.) Consequently, "[c]onspiracies are typically proved by circumstantial evidence. (See *People v. Bawden* (1962) 208 Cal.App.2d 589, 596-597.) '[S]ince such participation, cooperation or unity of action is difficult to prove by direct evidence, it can be inferred from the nature of the act done, the relation of the parties, the interests of the alleged conspirators, and other circumstances.' " (*Rickley v. Goodfriend* (2013) 212 Cal.App.4th 1136, 1166, quoting *Black v. Sullivan* (1975) 48 Cal.App.3d 557, 566.)

Substantial evidence supports the trial court's findings that the Beaches and Bellinos conspired with Solario to deprive De Jong of his interest in the Escalon property. The evidence at trial showed the following:

The Beaches "reached out" to Solario to talk about getting "some resolution" on the debt owed by De Jong. The Beaches also contacted Nicola Bellino to "pull together a meeting." The Beaches, Bellinos, and Solario met in January 2011 in the kitchen of the Escalon property. According to Solario, "the basic discussion was how the Beaches were going to get paid back for their note." Nicola Bellino told the Beaches that "we will work on this. Kim will make good on this. I will help. I will back them if that's what it is." The Beaches responded, "All right. We understand. If you can keep communicating with us, if you can come up with the money and pay us off the note, then we will be able to transfer title back to you."

Most importantly, appellants agreed that *Solario* "would be placed on the title to the [Escalon] property." At trial, George Beach conceded that the Beaches "transferred that property to [Solario] without any regard for any interest Mr. De Jong might have in that property." Thus, the kitchen meeting involved no discussion of protecting De Jong's interest in the property. Equally telling, none of the participants in the kitchen meeting ever informed De Jong of their agreement to transfer title solely to Solario. The agreement to transfer title to Solario without regard to De Jong constituted a conspiracy to wrongfully deprive him of his ownership interest in the Escalon property.

Appellants' actions after the kitchen meeting were consistent with their secret agreement to transfer title to Solario in derogation of De Jong's interest in the property. To this end, the Beaches and Solario met at the title company and sold the Escalon property to Solario for $94,438.38. The Bellinos, for their part, accepted $150,000 out of the sale of the Escalon property even though it included a substantial sum to which they were not entitled. In their agreement and their actions, appellants conspired to deprive De Jong of his lawful interest in the Escalon property.

39

## C.

### *Aiding and Abetting*

For similar reasons, we reject appellants' substantial evidence challenge to the trial court's factual findings that they aided and abetted each other in committing wrongful acts against De Jong. As we noted above, conspiracy and aiding and abetting are closely related. (*Navarrete v. Meyer*, *supra*, 237 Cal.App.4th at p. 1287, fn. 3.) "California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." (*Casey v. U.S. Bank Nat. Assn*. (2005) 127 Cal.App.4th 1138, 1145.) Thus, a theory of liability involving " ' "[a]iding-abetting focuses on whether a defendant knowingly gave 'substantial assistance' to someone who performed wrongful conduct . . . ." [Citation.] [¶] . . . [A]iding and abetting . . . necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act.' " (*Id.* at p. 1146, quoting *Howard v. Superior Court* (1992) 2 Cal.App.4th 745, 748-749.) Based on the similarities between conspiracy and aiding and abetting, much of the same evidence supports both theories of liability.

Substantial evidence supports the trial court's findings that appellants aided and abetted each other in depriving De Jong of his interest in the Escalon property. Appellants met in the kitchen of the Escalon property to discuss how the Beaches would receive repayment of their loan to De Jong. Rather than including De Jong in the discussion about the property for which he owned the majority interest, appellants kept him in the dark. Appellants never told De Jong about the meeting or their agreement to transfer title solely to Solario. The participants reached their agreement without any regard for De Jong's property interest. Contrary to appellants' assertions on appeal, the evidence showed that the Beaches and Bellinos agreed that title to the property should pass solely to Solario even though she had no financial interest in or ownership claim to

40

the Escalon property. In short, the testimony at trial established actual agreement by the Beaches and Bellinos to a plan to transfer title solely to Solario without any regard for De Jong's property interest.

## VIII

### *Punitive Damages*

Appellants argue that the trial court's imposition of punitive damages must be reversed because the findings that they acted with oppression, fraud, and malice are not supported by substantial evidence. Appellants further argue that the reduction of compensatory damages based on their other arguments also requires reduction of punitive damages to comport with constitutional due process guarantees. We disagree.

### A.

### *Trial Court Findings Regarding Punitive Damages*

In its statement of decision, the trial court noted a dozen times that its findings in support of the award of punitive damages were supported by clear and convincing evidence. In imposing punitive damages on the Beaches and Bellinos, the trial court summarized the evidence supporting the imposition of punitive damages as to George Beach as follows: He breached his fiduciary duty to De Jong, converted De Jong's property and conspired with Solario to deprive De Jong of his property. "Particularly aggravating the reprehensibility of his conduct, Mr. Beach communicated with the other defendants in secret many times over a long period to agree to and deliberately carry out the transfer of valuable real property that Mr. Beach held in trust for the benefit of Mr. De Jong to Kim Solario, without Mr. De Jong's knowledge or consent, and with utter disregard for his rights in that property or for the impact that the transfer may have on Mr. De Jong's physical or emotional health or well-being."

The trial court made parallel findings that Susan Beach breached her fiduciary duty to De Jong, converted his property, and conspired with Solario to deprive him of his

41

property. "Mrs. Beach owed the same duties to Mr. De Jong that her husband did, and Mrs. Beach participated in the same course of conduct with regard to the disposition of Mr. De Jong's property, likewise demonstrating complete disregard for Mr. De Jong's rights and for the impact that the transfer of Mr. De Jong's property to Ms. Solario may have on Mr. De Jong."

As to the Bellinos, the trial court found that they "converted Mr. De Jong's property, received fraudulent transfers thereof, and conspired with and aided and abetted George and Susan Beach and Kim Solario in the breach of their fiduciary duties to Mr. De Jong and in Ms. Solario's conversion of his property. . . . Particularly aggravating the reprehensibility of [their] conduct, [the Bellinos were] personally aware of Mr. De Jong's interest in the Escalon Property and his claim thereto, but [they] met in secret with the other defendants to plan and carry out the transfer of that property to [their] daughter, Kim Solario, which [they] facilitated by providing the money she used to purchase that property. [The Bellinos] subsequently assisted her in selling the property, agreeing in advance to receive money that belonged to Mr. De Jong from the sale of that property, and did so with knowledge or, certainly, with reason to know that Ms. Solario intended to keep the balance of the proceeds of the Escalon Property and not pay Mr. De Jong. . . . [The Bellinos'] participation in the aforementioned course of conduct spanned a long period of time."

De Jong, the trial court found, was in a vulnerable position "as he did not have legal control of the property and was unaware of the Defendants' plan until after it had been carried out." The Beaches and the Bellinos "knew or had reason to know of [De Jong's] vulnerability and of the risk that Ms. Solario would fail to protect or deliver Mr. De Jong's interest in the property to him." "Considered as a whole," the trial court found that the Beaches and Bellinos' "conduct was *highly reprehensible* and warrants a high amount of punitive damages, subject to [their] ability to pay." (Italics added.)

42

Based on these findings, the trial court imposed punitive damages in the amount of $100,000 against George and Susan Beach individually and limited to a total of $100,000 collectively. The trial court imposed punitive damages in the amount of $750,000 against Nicola and Judith Bellino individually and limited to a total of $750,000 collectively.

## B.

### *Substantial Evidence*

The requirement of clear and convincing evidence in the trial court to support an award of punitive damages does not change the standard of review for appellants' substantial evidence challenge. "As in other cases involving the issue of substantial evidence, we are bound to 'consider the evidence in the light most favorable to the prevailing party, giving him the benefit of every reasonable inference, and resolving conflicts in support of the judgment.' (9 Witkin, Cal. Procedure [(4th ed. 1997)] Appeal, § 359, p. 408.) But since the [trier of fact's] findings were subject to a heightened burden of proof, we must review the record in support of these findings in light of that burden. In other words, we must inquire whether the record contains 'substantial evidence to support a determination by clear and convincing evidence. . . .' " (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 891, *quoting Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1287.)

We begin by noting that appellants' substantial evidence challenge is focused on the trial court's findings that they acted with oppression, fraud, and malice. Appellants argue that the evidence does not support findings that they acted in a manner that was despicable and carried on with willful and conscious disregard for De Jong's property rights. In support of their argument, they cite evidence showing that – at the time of the transfer of title to Solario – the Beaches "believed DeJong [*sic*] and Solario were still a couple and were still living together." Thus, they assert that there was no evidence indicating that Solario would defraud De Jong. Appellants further argue that, based

43

largely on their prior substantial evidence argument, the evidence did not support findings that they engaged in a conspiracy against De Jong.

We reject appellants' substantial evidence challenge. The possibility that De Jong and Solario were still in a dating relationship did not excuse the fiduciary duty that the Beaches owed as trustees to De Jong. As we discussed above, in part I. C., the Beaches owed a fiduciary duty to De Jong that arose out of the resulting trust for which De Jong was the beneficiary. Moreover, the evidence at trial showed that the Beaches did not rely on De Jong's relationship with Solario as a way of safeguarding De Jong's interests. George Beach's testimony established that the Beaches acted without any regard for their duty to De Jong. The correspondence introduced at trial showed that the Beaches had grown impatient with De Jong over the lack of payment on their loan. In arranging the kitchen meeting, the Beaches reached out to Nicola Bellino even though the Bellinos were not parties to the loan to De Jong. During the kitchen meeting, the Beaches agreed to convey title to Solario alone.

It is telling that none of the participants in the kitchen meeting ever informed De Jong about their meeting or plan to transfer title to Solario. Instead, appellants and Solario secretly carried out their plan against De Jong's interest. The Beaches transferred title to Solario for only a fraction of the Escalon property's market value. For their part, the Bellinos facilitated the wrongful transfer by agreeing to the plan to transfer title to Solario and loaning Solario money so that she could receive title from the Beaches for far less than the fair market value of the property. The Bellinos engaged in this conduct even though they were aware of De Jong's interest in the Escalon property from the beginning of his efforts to purchase the residence. The Bellinos then received payment out of the sale of the Escalon property even though they did not own any percentage of the property. In short, substantial evidence at trial showed that the wrongful transfer of title to Solario was the result of cooperation between the Beaches and Bellinos that they undertook despite being well aware of De Jong's property rights.

## C.

***Reduction in Punitive Damages Based on Reduction of Compensatory Damages***

Appellants contend we must reduce the award of punitive damages as a matter of due process because of the reduction of compensatory damages for which they argue in other parts of their briefs. We have rejected appellants' other assertions of error regarding compensatory damages. Consequently, we also reject their contention that we must reduce the punitive damages award by an amount commensurate to the reduction in compensatory damages.

We are also not persuaded by the appellants' argument that the imposed punitive damages exceed constitutional limits. Regarding the constitutional limits of punitive damages, the California Supreme Court has explained that "the due process clause of the Fourteenth Amendment to the United States Constitution places limits on state courts' awards of punitive damages, limits appellate courts are required to enforce in their review of jury awards." (*Simon v. San Paolo U.S. Holding Co., Inc*. (2005) 35 Cal.4th 1159, 1171 (*Simon*).) Thus, "[t]he imposition of 'grossly excessive or arbitrary' awards is constitutionally prohibited, for due process entitles a tortfeasor to ' "fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." ' " (*Ibid.*; quoting *State Farm Mut. Auto. Ins. Co. v. Campbell* (2003) 538 U.S. 408, 416-417 [155 L.Ed.2d 585] (*State Farm*).)

The constitutional limit on punitive damages is not delineated by exact multiples or percentages of compensatory damages. Instead, there are no "rigid numerical limits" imposed on punitive damages by federal constitutional due process guarantees. (*Simon, supra,* 35 Cal.4th at p. 1171.) Courts employ "a three-factor weighing analysis looking to the nature and effects of the defendant's tortious conduct and the state's treatment of comparable conduct in other contexts. As articulated in *State Farm*, the constitutional 'guideposts' for reviewing courts are: '(1) the degree of reprehensibility of the

45

defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.' " (*Simon, supra*, 35 Cal.4th at pp. 1171-1172, quoting *State Farm, supra*, 538 U.S. at p. 418.)

In view of the lack of rigid mathematical formulas for the constitutional limits of punitive damage awards, "there is a wide range of reasonableness for punitive damages reflective of the fact finder's human response to the evidence presented. (*Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc*. [(1984)] 155 Cal.App.3d [381, 390,] 391.) On appeal, high ratios of punitive damages to compensatory damages, as much as 2,000 to 1, have been affirmed." (*McGee v. Tucoemas Federal Credit Union* (2007) 153 Cal.App.4th 1351, 1362; accord *Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc*., *supra*, 155 Cal.App.3d at pp. 391-392 [affirming a punitive damages award that was 27 times the award of compensatory damages].)

Here, the trial court determined that the Beaches and Bellinos were jointly liable for $460,663.03 in compensatory damages. In addition, the Beaches were liable for $100,000 in punitive damages and the Bellinos were liable for $750,000 in punitive damages. The Beaches' punitive damage liability represents less than a quarter of the compensatory damage award. Punitive damages as a percentage of the Beaches' liability for compensatory damages do not violate their constitutional due process rights. As the trial court found, the Beaches acted "in secret many times over a long period" in order to "deliberately carry out" a plan to deprive De Jong of his property rights. Despite their fiduciary duty to De Jong, they acted "with utter disregard" for his property rights and his physical and emotional well-being. For their conduct, which the trial court found to be despicable, the amount of punitive damages was not excessive.

We also conclude that the punitive damages imposed on the Bellinos was not excessive. As with the Beaches, the trial court expressly found that the Bellinos' conduct

46

was despicable. With the additional finding that the Bellinos engaged in highly reprehensive conduct, the trial court imposed punitive damages of slightly more than one and a half times the amount of compensatory damages. The finding of reprehensibility is based on findings that the Bellinos were actually aware of De Jong's property interest in the Escalon property when they secretly conspired with the Beaches and Solario to transfer ownership solely to the Bellinos' daughter. The Bellinos' participating in the conspiracy against De Jong's interest "spanned a long period of time." Their conduct also occurred despite the fact that they "aware of Mr. De Jong's vulnerability and conspired with and aided and abetted Ms. Solario in exploiting it." Defendants conspired against De Jong during the time that his father was dying of cancer. In light of the circumstances and express findings of despicable conduct, the trial court's imposition of punitive damages did not exceed constitutional limits.

## IX

### *Double Recovery*

Appellants contend the trial court erred in awarding De Jong "double recovery" by ordering appellants to pay both prejudgment interest and capital appreciation on the subsequent purchase of the Ripon property by Solario. Solario used the proceeds from the sale of the Escalon property to buy the Ripon property for the sales price of $359,000 plus $2,163.40 in closing costs. Appellants argue that De Jong was erroneously awarded prejudgment interest in addition to being allowed to keep the appreciation in the value of the Ripon property. The argument is meritorious.

### A.

### *Trial Court Award of Interest and Capital Appreciation*

The trial court found "that Mr. De Jong is the sole equitable and beneficial owner" of the Ripon property. Thus, the trial court determined that Solario held nominal title to the Ripon property under a resulting trust in favor of De Jong. The trial court ordered

47

Solario to convey possession of the property within 30 days of the judgment. The trial court gave appellants and Solario "a credit of $359,000" for the value of the Ripon property, "credited as of May 30, 2017." The trial court also ordered appellants and Solario jointly to pay prejudgment interest from July 28, 2014, to the date of entry of judgment at the rate of 7 percent. Appellants timely objected to the inclusion of both prejudgment interest and the appreciation of the Ripon property in responding to the proposed statement of decision and proposed judgment. Judgment including both was entered on February 14, 2018.

## B.

### *Compensation for Loss of Use*

A trial court may award prejudgment interest in order to make an injured party whole. "Prejudgment interest is awarded to compensate a party for the loss of the use of his or her property." (*Bullis v. Security Pac. Nat'l Bank* (1978) 21 Cal.3d 801, 815 (*Bullis*).) In *Bullis*, for example, the trial court properly awarded prejudgment interest where plaintiff "was deprived of the use of a quarter of a million dollars for several years due to [defendant's] negligence." (*Ibid.*) Thus, prejudgment interest may be awarded to ensure that the injured party receives full compensation. (*Nordahl v. Department of Real Estate* (1975) 48 Cal.App.3d 657, 665)

A trial court may award compensation in an alternate form. For example, the trial court may award the injured party all of the increase of the value of the wrongfully deprived property during the time that defendant exercised dominion over it. (*Heckmann v. Ahmanson* (1985) 168 Cal.App.3d 119.) In *Heckmann,* shareholders in Walt Disney Productions paid $325 million to the Steinberg Group – which threatened a hostile takeover. (*Id.* at p. 123.) The Disney shareholders established that the Steinberg group wrongfully profited on the shareholders' payment. (*Ibid.*) The *Heckmann* court held that the trial court had discretion to award the ill-gotten profit to the shareholders and

48

explained that "under a constructive trust upon money, the plaintiff is entitled to trace the fund to its ultimate product or profit. [Citation.] By the time plaintiff obtains a final judgment, the original fund may have grown far greater than the legal rate of interest would recognize." (*Id.* at p. 135.)

Whatever form of compensation that the trial court awards, however, a party may not receive double compensation for the same injury. Indeed, "double recovery is antithetical to compensatory damages." (*Fuller v. Capitol Sky Park* (1975) 46 Cal.App.3d 727, 732.) We review claims that a trial court has erred in awarding double compensation for abuse of discretion. (Cf. *Bullis, supra,* 21 Cal.3d at pp. 814-815; *Nelson v. United Technologies* (1999) 74 Cal.App.4th 597, 617.)

## C.

### *Redundant Compensation for Loss of Use of Property*

The trial court erred in awarding De Jong prejudgment interest in addition to capping the value of the Ripon property in a manner that also awarded the property's appreciation to De Jong. Prejudgment interest compensated De Jong for the loss of use of his economic interest in the Escalon property caused by appellants' conspiracy. Because De Jong received compensation for his loss of use, he was not also entitled to capital appreciation of the Ripon property. Receipt of both types of compensation would have awarded redundant damages for the same injury. Because De Jong was not entitled to redundant compensation for his loss of use, either the prejudgment interest or the appreciation on the Ripon property must be subtracted from his award.

The question of adequate compensation under the circumstances of the case ordinarily presents a question that the trier of fact is uniquely suited to address. Although the trial court determined that De Jong was entitled to prejudgment interest, it did not calculate the amount of that interest. Appellants' objection on grounds of double recovery was timely, but made at a time when they did not have the opportunity to

49

introduce evidence relating to the value of the Ripon property. Accordingly, we remand the matter to the trial court for the limited purpose of determining the correct amount of compensation to which De Jong is entitled for his loss of use of his property. (*Sanchez v. Brooke* (2012) 204 Cal.App.4th 126, 142 [remand appropriate to provide trial court with opportunity to determine correct compensation amount].)

## D.

### *Costs of Suit*

Appellants assert that if we reverse the judgment in any respect that we must also reverse the trial court's award of costs to De Jong. We disagree.

In asserting that the award of costs must be reversed, appellants rely on *Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106. In *Poseidon*, a reversal of a judgment of dismissal meant that the procedural posture of the case was too early to determine who might eventually turn out to be the prevailing party on the revived claims. (*Id.* at p. 1120.) The same is not true in this case. Our limited remand for purposes of determining the correct amount of compensation for loss of use of De Jong's property leaves intact all of the substantial parts of the judgment regarding De Jong's causes of action against appellants. De Jong remains the prevailing party on the scope of damages arising out of appellants' conspiracy to deprive him of his interest in the Escalon property as well as the punitive damages that he secured from the trial court. De Jong's continuing status as prevailing party does not warrant vacating the award of costs for a reversal and remand of a minor issue in the judgment.[4]

---

[4] Our conclusion that appellants' meritorious argument regarding double recovery of compensation involving prejudgment interest and capital appreciation does not foreclose appellants' separate challenge to costs-of-proof. Thus, we proceed to consider appellants' argument regarding the award of costs-of-proof to De Jong.

## APPEAL IN C085462

### *Costs-of-proof and Principles of Review*

In case No. C085462, appellants challenge the trial court's award of costs-of-proof to De Jong. The trial court awarded costs-of-proof under section 2033.420. In pertinent part, section 2033.420 provides: "(a) If a party *fails to admit* the genuineness of any document or the truth of any matter when requested to do so under this chapter, and if the party requesting that admission thereafter proves the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. [¶] (b) The court shall make this order unless it finds any of the following: [¶] (1) An objection to the request was sustained or a response to it was waived under Section 2033.290. [¶] (2) The admission sought was of no substantial importance. [¶] (3) The party failing to make the admission had reasonable ground to believe that that party would prevail on the matter. [¶] (4) There was other good reason for the failure to admit." (Italics added.)

Requests for admission are intended to expedite or shorten trials. (*City of Glendale v. Marcus Cable Associates, LLC* (2015) 235 Cal.App.4th 344, 353.) "Requests for admission are not restricted to facts or documents, but apply to conclusions, opinions, and even legal questions. (See 2 Witkin, [Cal. Evidence (5th ed. 2012) Discovery,] § 174 at p. 1164; *Burke v. Superior Court of Sacramento County* (1969) 71 Cal.2d 276, 282.) Thus, requests for admission serve to narrow discovery, eliminate undisputed issues, and shift the cost of proving certain matters. As such, the requests for admission mechanism is not a means by which a party obtains additional information, but rather a dispute resolution device that eliminates the time and expense of formal proof at trial." (*Id.* at pp. 353-354.)

51

## Background

Prior to trial, De Jong served requests for admissions on appellants. The pertinent requests, along with appellants' responses, are as follows:

### George Beach – Request Number 3

De Jong's request for admission number 3 to George Beach was: "Admit that at the time that Plaintiff Craig De Jong paid $340,500.00 to George Beach, George Beach understood that that money was to be used for the purchase of the real property located at 21335 E. River Road, Escalon, California." To this request, George Beach responded: "Objected to as overbroad, vague, ambiguous, argumentative, compound, calling for speculation, and containing conjunctive and/or disjunctive requests. Without waiving said objections and subject to them, this Defendant responds as follows: Defendant denies that Craig DeJong [*sic*] paid him any monies. Defendant admits that the $85,000 contributed as a loan was to be used to purchase the real property."

The trial court found that the Beaches purchased the Escalon property "largely with money paid by Mr. De Jong" and that "Mr. De Jong contributed his $340,500 to the purchase price of the Escalon Property by cashier's check payable to George Beach." Based on his contribution, De Jong provided 80.02 percent of the purchase money. The trial court further found that the Beaches "understood that Mr. De Jong had not gifted them the $340,500, but that they held title to that property for the benefit of Mr. De Jong."

### George Beach – Request Number 4

De Jong's request for admission number 4 to George Beach was: "Admit that at the time that Plaintiff Craig De Jong paid $340,500.00 to George Beach, George Beach had no knowledge of an intent on the part of Craig De Jong to make a gift of that money to anyone." To this request, George Beach responded: "Objected to as overbroad, vague, ambiguous, argumentative, compound, calling for speculation and containing conjunctive

52

and/or disjunctive requests. Without waiving said objections and subject to them, this Defendant responds as follows: Defendant denies that Craig DeJong [*sic*] paid him any monies. Regarding the remainder of the request, Defendant lacks sufficient information or knowledge to admit or deny this request and on that basis, deny."

The trial court found that De Jong paid $340,500 to George Beach with which the Beaches purchased the Escalon property. The Beaches understood they held title for De Jong. The trial court expressly found that De Jong did not intend to gift his interest in the Escalon property to anyone.

### *George Beach – Request Number 5*

De Jong's request for admission number 5 to the Beaches was: "Admit that at the time that Plaintiff Craig De Jong paid $340,500.00 to George Beach, George Beach had no knowledge of an intent on the part of Craig De Jong to make a loan of that money to anyone." To this request, George Beach responded: "Objected to as overbroad, vague, ambiguous, argumentative, compound, calling for speculation and containing conjunctive and/or disjunctive requests. Without waiving said objections and subject to them, this Defendant responds as follows: Defendant denies that Craig DeJong [*sic*] paid him any monies. Regarding the remainder of the request, Defendant lacks sufficient information or knowledge to admit or deny this request and on that basis, deny."

The trial court found that De Jong contributed $345,500 of the purchase money for the purchase of the Escalon property. As a consequence, De Jong had an 80.02 percent interest in the Escalon property as a percentage of his contribution toward the purchase price.

### *Beaches – Request Number 8*

De Jong's request for admission number 8 to the Beaches was: "Admit that at the time that George Beach and Susan Beach acquired the real property located at 21335 E. River Road, Escalon, California, they understood Craig De Jong to be a co-owner of that

53

property with them." George Beach responded: "Objected to as overbroad, vague, ambiguous, argumentative, compound, calling for speculation, and containing conjunctive and/or disjunctive requests. In addition, this request is violative of the marital privilege contained in Evidence Code Section 970 et seq. Without waiving said objections, this Defendant responds as follows: Deny as to Defendant George Beach." Susan Beach responded in the same manner, except that her concluding sentence read: "Deny as to Defendant Susan Beach."

The trial court found that the Beaches understood they held title for De Jong's benefit and that he had an ownership interest commensurate with his contribution to the purchase price.

### *Beaches – Request Numbers 14 and 15*

De Jong's request for admission numbers 14 and 15 to the Beaches was: "Admit that George Beach and Susan Beach transferred the real property located at 21335 E. River Road, Escalon, California, to Kimberly Solario for less than fair market value" and "Admit that the fair market value of the real property located at 21335 E. River Road, Escalon, California in April 2011 was not less than $445,000.00." To this request, the Beaches responded: "Objected to as overbroad, vague, ambiguous, argumentative, compound, calling for speculation, and containing conjunctive and/or disjunctive requests. In addition, this request is violative of the marital privilege contained in Evidence Code Section 970 et seq. Finally, this request is objected to as seeking expert opinion. Without waiving said objections and subject to them, this Defendant responds as follows: This Defendant lacks sufficient information or knowledge to admit or deny this request and on that basis, deny."

The trial court found that the fair market value of the property was $445,000 at the time of transfer in April 2011.

54

### *Beaches – Request Number 16*

De Jong's request for admission number 16 to the Beaches was: "Admit that Craig De Jong did not consent to the transfer of the real property located at 21335 E. River Road, Escalon, California from George Beach and Susan Beach to Kimberly Solario." To this request, the Beaches responded: "Objected to as overbroad, vague, ambiguous, argumentative, compound, calling for speculation, and containing conjunctive and/or disjunctive requests. In addition, this request is violative of the marital privilege contained in Evidence Code Section 970 et seq. Without waiving said objections and subject to them, this Defendant responds as follows: Deny."

The trial court found that De Jong did not know of or consent to the transfer of title to Solario.

### *Beaches – Request Number 17*

De Jong's request for admission number 17 to the Beaches was: "Admit that Craig De Jong . . . has not forgiven or excused Mr. or Mrs. Beach from making any payment to him in connection with the sale or transfer of the Escalon Property to Kimberly Solario." To this request, the Beaches responded: "Objected to as overbroad, vague, ambiguous, argumentative, compound, calling for speculation, and containing conjunctive and/or disjunctive requests. In addition, this request is violative of the marital privilege contained in Evidence Code Section 970 et seq. Finally, this request is objected to as calling for a legal conclusion or analysis. Without waiving said objections, this Defendant responds as follows: Deny."

The trial court found that De Jong did not forgive or excuse repayment to him of his interest in the Escalon property.

### *Bellinos – Request Number 2*

De Jong's request for admission number 2 asked both Nicola and Judith Bellino: "Admit that you knew of Craig De Jong's contribution to the purchase price of the real

property located at 21335 E. River Road, Escalon, California, at or about the time of closing of the sale of that property to George Beach and Susan Beach in August 2009." To this request, Nicola and Judith Bellino responded: "Objected to as overbroad, vague, ambiguous, argumentative, compound, calling for speculation, and containing conjunctive and/or disjunctive requests. Without waiving said objections and subject to them, this Defendant responds as follows: See response to request no. 1." In response to request for admission number 1, both Nicola and Judith responded: "Admit that Plaintiff contributed approximately $340,500 towards the purchase of the described property."

In its statement of decision, the trial court found that Nicola and Judith Bellino actually knew about De Jong's interest in the Escalon property, and that they had been involved from the start in the process by which De Jong purchased the property.

### *Bellinos – Request Number 4*

De Jong's request for admission number 4 asked both Nicola and Judith Bellino: "Admit that you requested that George Beach and Susan Beach contribute the balance of the approximately $425,000.00 purchase price of the real property located at 21335 E. River Road, Escalon, California, above Craig De Jong's approximately $340,500.00 contribution toward that purchase price." To this request, Nicola and Judith Bellino responded: "Objected to as overbroad, vague, ambiguous, argumentative, compound, calling for speculation, and containing conjunctive and/or disjunctive requests. Without waiving said objections and subject to them, this Defendant responds as follows: Admit that George Beach and/or Susan Beach contributed approximately $85,000."

The trial court found that Nicola Bellino helped De Jong by reaching out to the Beaches, who agreed to contribute $85,000.00 to complete the purchase.

### *Bellinos – Request Number 5*

De Jong's request for admission number 5 asked both Nicola and Judith Bellino: "Admit that George Beach and Susan Beach purchased the real property located at 21335

56

E. River Road, Escalon, California, in August 2009 at your request." To this request, Nicola and Judith Bellino responded: "Objected to as overbroad, vague, ambiguous, argumentative, compound, calling for speculation, and containing conjunctive and/or disjunctive requests. Without waiving said objections and subject to them, this Defendant responds as follows: See response to request no. 4."

The trial court found that Nicola Bellino "reached out" to the Beaches, who then contributed $85,000 to complete the purchase of the Escalon Property. The Beaches executed an addendum to add themselves as cobuyers with De Jong. Nicola Bellino also communicated De Jong's desire not to have his name appear on title to the Beaches. The Beaches, in turn, agreed to hold title for him and executed an addendum to that effect.

### *Bellinos – Request Number 6*

De Jong's request for admission number 6 asked the Bellinos: "Admit that to the best of your knowledge, Craig De Jong's contribution to the purchase price of the real property located at 21335 E. River Road, Escalon, California in 2009 was not a gift." To this, Nicola and Judith Bellino responded: "Objected to as overbroad, vague, ambiguous, argumentative, compound, calling for speculation, and containing conjunctive and/or disjunctive requests. Without waiving said objections and subject to them, this Defendant responds as follows: Deny."

As we have recounted, the trial court found that De Jong had not gifted his interest in the Escalon property to anyone.

### *Bellinos – Request Number 8*

De Jong's request for admission number 8 asked Nicola and Judith Bellino: "Admit that Craig De Jong acquired an equitable interest in the real property located at 21335 E. River Road, Escalon, California, by virtue of his contribution to George Beach of approximately eighty percent of the purchase price of that property in August 2009." To this request, Nicola and Judith Bellino responded: "Objected to as overbroad, vague,

ambiguous, argumentative, compound, calling for speculation, and containing conjunctive and/or disjunctive requests. Without waiving said objections and subject to them, this Defendant responds as follows:  Deny."

The trial court found that De Jong had an ownership interest of 80.02 percent in the Escalon property.

### Bellinos – Request Number 9

De Jong's request for admission number 9 asked Nicola and Judith Bellino: "Admit that George Beach and Susan Beach transferred the real property located at 21335 E. River Road, Escalon, California to Kimberly Solario at your request."  To this request, Nicola and Judith Bellino responded:  "Objected to as overbroad, vague, ambiguous, argumentative, compound, calling for speculation, and containing conjunctive and/or disjunctive requests.  Without waiving said objections and subject to them, this Defendant responds as follows:  It was agreed by all parties, including Plaintiff, that title to the real property would be transferred to Kimberly Solario upon repayment of the $85,000 contributed by George and/or Susan Beach."

The trial court found that the Bellinos, the Beaches, and Solario collectively conspired to sell the Escalon Property without De Jong's knowledge, and the Bellinos provided Solario with the money to enable the transfer.

### Bellinos – Request Number 15

De Jong's request for admission number 15 asked Nicola and Judith Bellino: "Admit that you had no unrecorded or equitable lien on the real property located at 21335 E. River Road, Escalon, California at the time of its sale in July 2014."  To this request, Nicola and Judith Bellino responded:  "Objected to as overbroad, vague, ambiguous, argumentative, compound, calling for speculation, and containing conjunctive and/or disjunctive requests.  In addition, this request calls for a legal conclusion.  Without waiving said objections and subject to them, this Defendant responds as follows:  See response to request no. 10."  The Bellinos' response to request for admission number 10

was: "Admit that George Beach and Susan Beach were repaid the $85,000, plus interest, that they had loaned/contributed to the purchase of the specified property."

The trial court found that the Bellinos had no lien or other right to payment from the proceeds of the sale of the Escalon Property. The trial court further found that to the extent Solario owed them any debt, it was unsecured.

### *Bellinos – Request Number 19*

De Jong's request for admission number 19 asked Nicola and Judith Bellino: "Admit that the transfer to you of proceeds of the July 2014 sale of the real property located at 21335 E. River Road, Escalon, California, was intended to shield that money from Craig De Jong." To this request, Nicola and Judith Bellino responded: "Objected to as overbroad, vague, ambiguous, argumentative, compound, calling for speculation, and containing conjunctive and/or disjunctive requests. Without waiving said objections and subject to them, this Defendant responds as follows: Deny."

The trial court found that the $150,000 transfer out of escrow for the Escalon property was made to the Bellinos in derogation of De Jong's property rights.

### *Order Granting the Motion for Costs-of-proof*

After entry of judgment, De Jong moved for costs-of-proof. Appellants opposed the motion. The trial court found good cause to award costs-of-proof on the following grounds:

"1. Mr. De Jong propounded requests for admission on the Defendants: Kim Solario, George Beach, Susan Beach, Nicola Bellino, and Judith Bellino.

"2. Kim Solario failed to admit Mr. De Jong's Requests for Admission nos. 2-5, 9-25, 28-30, 35-36, and 41 propounded by Mr. De Jong.

"3. George Beach failed to admit Mr. De Jong's Requests for Admission nos. 3-6, 8, and 14-17 propounded by Mr. De Jong.

59

"4.  Susan Beach failed to admit Mr. De Jong's Requests for Admission nos. 8 and 14-17 propounded by Mr. De Jong.

"5.  Nicola Bellino failed to admit Mr. De Jong's Requests for Admission nos. 2, 4-6, 8-9, 15, and 19 propounded by Mr. De Jong.

"6.  Judith Bellino failed to admit Mr. De Jong's Requests for Admission nos. 2, 4-6, 8-9, 15, and 19 propounded by Mr. De Jong.

"7.  At trial, Mr. De Jong proved the truth of the matters that Mr. De Jong requested that the Defendants admit in the above-referenced requests for admission.

"8.  The grounds for relief from an award of expenses under Code of Civil Procedure section 2033.420[, subdivision ](b) do not exist as to the Defendants' failure to admit the above-referenced requests for admission.

"9.  Mr. De Jong reasonably incurred the attorney's fees sought in his motion as expenses of making proof of the matters that the Defendants failed to admit."  (Italics omitted.)

While the trial court determined that defendants were jointly liable for De Jong's attorney fees, it capped their respective individual liabilities.  The order limited attorney fees as to Solario to $183,182, as to George Beach to $156,966, as to Susan Beach to $155,337.50, as to Nicola Bellino to $157,966.50, and as to Judith Bellino to $157,966.50.  The trial court ordered that De Jong's recovery of costs-of-proof under section 2033.420 not exceed a total of $189,532.50 from all defendants.

## X

### *Costs-of-proof Award in the Absence of Motion to Compel*

Appellants argue that De Jong is not entitled to receive costs-of-proof because he did not move to compel further responses to his requests for admission.  We agree in part.

60

## A.

### *Scope of Review*

In the trial court, appellants opposed De Jong's motion for costs-of-proof. One of their grounds of opposition related to De Jong's failure to move to compel further responses. On this point, appellants argued: "Here, Mr. and Mrs. Bellino's responses to [requests for admission] Nos. 2, 4, 5, 9 and 15 contain no denials, whatsoever. To the contrary, their responses to these [requests for admission] consist of admissions that [De Jong] now contends evaded important aspects of the Requests and, effectively, left the Requests unanswered. However since [De Jong] never moved to compel further responses to these [requests for admission] before his Motion, he waived the right to seek costs in proving the truth of *these* matters. [¶] Similarly, Mr. Beach's response to Request No. 3 contains denials in part. Mr. Beach's partial-denial does not address any central aspect of the request and is, therefore, a denial in mere form rather than substance. Instead, this denial merely relates the request's assumption: that [De Jong] paid money to Mr. Beach in the first place. In a similar vein, Mr. Beach's partial-admission is no denial at all."

## B.

### *Necessity of a Motion to Compel Further Responses*

We begin our analysis by noting that, in the trial court, appellants asserted the waiver of costs-of-proof for lack of a motion to compel only as to the Bellinos' responses to requests for admission numbers 2, 4, 5, 9, and 15, and George Beach's responses to request for admission number 3. Having limited their argument in the trial court regarding the lack of motion to compel to these six requests for admission, we deem the issue preserved only as to these six requests. " ' "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system,

61

each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. . . .” ’ ” (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564, quoting *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 830.)  And, as to these six requests, we conclude that the trial court erred in awarding costs-of-proof as to four requests posed to the Bellinos.

In considering whether section 2033.430 requires a motion to compel in order to allow an award of costs-of-proof, we apply the independent standard of review because questions of statutory interpretation are reviewed without deference to the trial court. (*Webster v. Appellate Division of Superior Court* (2020) 51 Cal.App.5th 676, 679.)  As the California Supreme Court has explained, “As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature’s intent so as to effectuate the law’s purpose.  (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572.)  We begin by examining the statute’s words, giving them a plain and commonsense meaning. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476.)  We do not, however, consider the statutory language ‘in isolation.’  (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) Rather, we look to ‘the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . .  [Citation.]’  (*West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 608.)  That is, we construe the words in question ‘ “in context, keeping in mind the nature and obvious purpose of the statute . . . .” [Citation.]’  (*Ibid*.)” (*People v. Murphy* (2001) 25 Cal.4th 136, 142.)

Section 2033.420 provides for costs-of-proof when “a party fails to admit . . . the truth of any matter when requested to do so . . . .”  Subdivision (b)(1) of section 2033.420 provides that “[t]he court shall make this order [awarding costs-of-proof] unless it finds . . . [¶] . . . [a]n objection to the request was sustained or a response to it was waived under Section 2033.290.”  In turn, section 2033.290, subdivision (a), provides:  “On receipt of a response to requests for admissions, the party requesting admissions may

move for an order compelling a further response if that party deems that either or both of the following apply:  [¶]  (1) An answer to a particular request is *evasive or incomplete*. [¶]  (2) An objection to a particular request is without merit or too general."  (Italics added.)  Subdivision (c) of section 2033.290 imposes a deadline on motions to compel as follows:  "Unless notice of this motion is given within 45 days of the service of the verified response, or any supplemental verified response, or any specific later date to which the requesting party and the responding party have agreed in writing, the requesting party *waives* any right to compel further response to the requests for admission."  (Italics added.)

Under this statutory scheme, the costs-of-proof statute (§ 2033.420, subd. (b)(1)) refers to the 45-day deadline in subdivision (c) of section 2033.290.  By incorporating the 45-day deadline of subdivision (c), section 2033.420 signals that an objection based on an "evasive or incomplete" (§ 2033.290, subd. (a)(1)) answer requires a motion to compel further responses.  The deadline to bring the motion to compel further responses imposes both the obligation and timeline that the requesting party must follow.  Therefore, De Jong was required to bring a motion to compel within the 45-day statutory deadline to preserve the issue of whether the answers given were evasive or incomplete.

De Jong asserts that he had the prerogative to elect either to move to compel *or* to litigate through trial and then seek costs-of-proof.  In support of this assertion, De Jong relies on *Zorro Inv. Co. v. Great Pacific Securities Corp.* (1977) 69 Cal.App.3d 907. *Zorro*, however, is inapposite because it did not involve a challenge to an award of costs-of-proof.  Instead, *Zorro* involved the question of whether a propounding party was required to file a motion to compel before requests were deemed admitted in the absence of a response. (*Id.* at p. 913.)  Moreover, the *Zorro* court relied on a now superseded set of statutes governing requests for admissions and sanctions. (*Id.* at pp. 918-919 [former §§ 2033 & 2034].)  Thus, we are not persuaded that *Zorro* provides authority for excusing a motion to compel before securing costs-of-proof under the current statute.

For similar reasons, there is only limited utility in appellants' cited cases of *Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618 (*Wimberly*), and *American Federation of State, County & Municipal Employees v. Metropolitan Water Dist.* (2005) 126 Cal.App.4th 247 (*American Federation*). *Wimberly* and *American Federation* also relied on a superseded costs-of-proof statute.

In *Wimberly*, the trial court denied plaintiff's motion for costs-of-proof against Derby Cycle Corporation (Derby), the manufacturer of a mountain bike fork assembly. (*Wimberly, supra,* 56 Cal.App.4th at p. 623.) Before trial, Derby initially denied all requests for admission. (*Id.* at p. 635.) However, Derby later amended its responses to admit that a microscopic crack was introduced during the welding process but denied that the improper welding caused plaintiff's injuries. (*Id.* at p. 636.) As to the request for admission that the defect caused plaintiff to require future medical care, Derby responded: " 'Objection. *Defendant cannot respond* to this question as phrased. The request is vague and ambiguous as to what is "claimed" by the plaintiff as well as to the extent of medical care the plaintiff seeks. To the extent defendant can respond, defendant denies that the extent of future medical care, including replacement of prosthetic implants is reasonable and necessary.' " (*Ibid.,* italics added.) A week before trial, Derby again amended its response to deny that there was a manufacturing defect in the product. (*Ibid.*)

During the trial in *Wimberly*, Derby did not introduce any evidence regarding the manufacturing defect, causation, or future medical care. (*Wimberly, supra,* 56 Cal.App.4th at p. 636.) Even so, the trial court denied plaintiff's motion for costs-of-proof on grounds that Derby had a reasonable basis for denying the defect and causation and that plaintiff had not made a motion to compel regarding the request for admission relating to future medical costs. (*Ibid.*) The *Wimberly* court reversed the denial of costs regarding defect and causation on grounds that the trial court had erred in finding a reasonable basis for the denials. (*Ibid.*) However, the *Wimberly* court concluded that

plaintiff was "not entitled to costs associated with the medical care issue, because he made no motion to compel a further response after Derby objected to the request for admission." (*Ibid*.) *Wimberly* cited former section 2033, subdivision (*l*). At the time, subdivision (*l*) of former section 2033 provided in pertinent part:

"(*l*) [Orders compelling further response; failure to obey] If the party requesting admissions, on receipt of a response to the requests, deems that (1) an answer to a particular request is *evasive or incomplete*, or (2) an objection to a particular request is without merit or too general, that party may move for an order compelling a further response. The motion shall be accompanied by a declaration stating facts showing a reasonable and good faith attempt at an informal resolution of each issue presented by the motion." (Stats. 1991, ch. 1090, § 13, p. 5088, italics added.)

Without analysis, the *Wimberly* court affirmed the trial court's determination that the propounding party was not entitled to costs-of-proof in the absence of a motion to compel. (*Wimberly, supra*, 56 Cal.App.4th at pp. 636-637.) In the absence of any analysis and because it relied on a superseded statute, we discern no guidance from *Wimberly* for our present analysis.

As in *Wimberly*, it was the former costs-of-proof statute that was at issue in *American Federation*, *supra*, 126 Cal.App.4th 247. The *American Federation* court distinguished *Wimberly* to affirm an award of costs-of-proof that had been made without a prior motion to compel. (*American Federation,* at p. 269.) *American Federation* held that a defendant's "admissions and/or denials provided complete responses to the requests, . . . leaving nothing to address in a motion to compel" under subdivisions (*l*) and (*o*) of former section 2033. (*American Federation, at p. 269.*) Even though *American Federation* construed an earlier statute, that statute did require a motion to compel for evasive and incomplete answers. We agree with the *American Federation* court's rationale that if there is nothing to address in a motion to compel, then a motion to compel is not required to preserve a claim for costs-of-proof. It is well settled that "[t]he

65

law does not require the performance of an idle act." (*Robinson v. Puls* (1946) 28 Cal.2d 664, 667.) If responses to requests for admission render a motion to compel an idle act, a motion to compel is not required for costs-of-proof.

## C.

### *Analysis of the Responses*

De Jong did not bring a motion to compel further answers to the requests for admission for which he was awarded costs-of-proof by the trial court. As a consequence, De Jong's waiver of the time within which to bring a motion to compel also forfeited his right under section 2033.420 to recover costs-of-proof for evasive or incomplete answers. Thus, the question becomes whether the responses provided by the Beaches and Bellinos to the requests at issue were evasive or incomplete, or instead stood on their own such that there was nothing to address in a motion to compel.

In request for admission number 3, George Beach was asked to admit "that at the time that Plaintiff Craig De Jong paid $340,500.00 to George Beach, George Beach understood that that money was to be used for the purchase of the [Escalon property]." In response, George Beach stated that he "denies that Craig DeJong [*sic*] paid him any monies." The trial court, however, found that "Mr. De Jong contributed his $340,500 to the purchase price of the Escalon Property by cashier's check payable to George Beach." George Beach flatly denied a fact that De Jong proved, namely that De Jong paid him for his share of the Escalon property purchase price. On this basis, we affirm the trial court's award of costs-of-proof for this request.

In request number 2 of the Bellinos, De Jong asked them to admit that they knew of his contribution to the purchase price of the Escalon property. Nicola and Judith Bellino reiterated their "response to request no. 1," which was that they admitted that De Jong "contributed approximately $340,500 towards the purchase of the described property." This admission was responsive to De Jong's request. As a responsive

66

admission, it was not subject to costs-of-proof to De Jong. If De Jong had found the *admission* to be an incomplete admission, he could have moved to clarify how it might have been incomplete.

In request for admission number 4, De Jong asked the Bellinos to admit that they asked the Beaches to contribute the remainder of the purchase price for the Escalon property to the extent that De Jong was short. To this request, the Bellinos responded that they "[a]dmit[ted] that George Beach and/or Susan Beach contributed approximately $85,000." This was an admission responsive to the request. The trial court's finding was the same as the admission, namely that the Bellinos reached out to the Beaches who then contributed $85,000 to complete the sale of the Escalon property. The trial court should not have awarded costs-of-proof for this request.

De Jong's request number 5 to the Bellinos asked them to admit that the Beaches purchased the property that their request. In response, the Bellinos pointed to their admission to request number 4. As with their admission to request number 4, the gist of their answer to request number 5 was therefore also an admission. For the same reason as with request number 4, we conclude that the admission to request number 5 was not subject to costs-of-proof. If De Jong had believed the *admission* did not admit *enough*, he could have moved to compel a further answer by indicating how he had thought the admission was insufficient.

In request for admission number 9, De Jong asked the Bellinos to admit that they requested of the Beaches that the Beaches transfer tittle to Solario. To this, the Bellinos responded that "[i]t was agreed by all parties, including [De Jong], that title to the real property would be transferred to Kimberly Solario upon repayment of the $85,000 contributed by George and/or Susan Beach." This response was patently false. The trial court found that the Bellinos, Beaches, and Solario secretly conspired against De Jong in planning to transfer title to Solario. The trial court properly awarded costs-of-proof for this request.

67

In request for admission number 15, De Jong asked the Bellinos to admit that they held no secret or unrecorded lien on the Escalon property in July 2014. To this request, the Bellinos pointed to their response to request number 10 where they stated: "Admit that George Beach and Susan Beach were repaid the $85,000, plus interest, that they had loaned/contributed to the purchase of the specified property." This response was evasive in that it did not address the call of the question at all. Indeed, the response did not touch on liens at all. As an evasive response, De Jong was obligated to move to compel a further response under sections 2033.420, subdivision (b)(1) and 2033.290, subdivision (a)(1) before claiming costs-of-proof.

In sum, the trial court erred in awarding costs-of-proof for request numbers 2, 4, 5, and 15 of the Bellinos.

# XI

## *Good Faith Denial*

Appellants next argue that the trial court abused its discretion in awarding costs-of-proof because they had good faith bases for denying the requests for admission. Specifically, appellants challenge the award of costs-of-proof on this ground as to requests for admission numbers 8, 16, and 17 addressed to the Beaches and numbers 6, 8, and 19 as to the Bellinos. The argument does not persuade us.

## A.

### *Review*

As a general rule, the award of costs-of-proof is a matter addressed to the sound discretion of the trial court. Thus, " ' "[t]he determination of whether 'there were no good reasons for the denial,' whether the requested admission was 'of substantial importance,' and the amount of expenses to be awarded, if any, are all within the sound discretion of the trial court. [Citation.]" ' " (*Doe v. L.A. County Dep't of Children & Family Services* (2019) 37 Cal.App.5th 675, 690, quoting *Bloxham v. Saldinger* (2014)

228 Cal.App.4th 729, 753.) "In evaluating whether a 'good reason' exists for denying a request to admit, 'a court may properly consider whether at the time the denial was made the party making the denial held a reasonably entertained good faith belief that the party *would prevail* on the issue at trial.' " (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1276, quoting *Brooks v. American Broadcasting Co*. (1986) 179 Cal.App.3d 500, 511, italics added.)

## B.

### *Beaches – Request Numbers 8, 16, and 17*

The Beaches argue that they had good faith bases to deny that they understood at the time they acquired the Escalon property that De Jong was a co-owner of the property (request number 8), that De Jong never consented to their transfer of title to Solario (request number 16), and that De Jong never gifted them any money (request number 17). We conclude that the trial court did not abuse its discretion in implicitly finding that the Beaches did not have good faith bases for these denials.

The trial court expressly found that the parties understood that their contribution toward the purchase price of the Escalon property was a loan and that their holding title to the property was an accommodation to De Jong "and a means of securing repayment of their loan." The Beaches never laid claim to owning the property and therefore did not collect rent or pay for any expenses incurred by the Escalon property. After the close of escrow on the Escalon property, George Beach wrote a check to De Jong due to an overpayment to escrow. Despite their understanding that they merely held a claim to a loan on the Escalon property, the Beaches engaged in a long and secret conspiracy against De Jong. Indeed, it was the Beaches who initiated the kitchen meeting among appellants and Solario. And the Beaches transferred title to the Escalon property without any regard for De Jong's interest.

Perhaps most importantly for purposes of this issue, the trial court reiterated a dozen times that the evidence supporting its findings that warranted punitive damages was supported by clear and convincing evidence. That De Jong prevailed on his claims on this elevated standard of proof supports the conclusion that the Beaches lacked good faith bases for their denials. In making its findings, the trial court also noted that appellants' testimony at trial regarding the kitchen meeting and assertions of De Jong's consent to the transfer was not credible. In short, the record does not establish an abuse of discretion by the trial court in implicitly rejecting the Beaches' argument that they had good faith bases for denying these requests for admissions.

## C.

### *Bellinos – Request Numbers 6, 8, and 19*

For similar reasons, we reject the Bellinos' argument on this issue. Specifically, the Bellinos argue they had good faith bases to deny that they knew De Jong's contribution of the purchase price of the property was not a gift (request number 6), that De Jong owned 80 percent of the Escalon property (request number 8), and that they money they received from Solario from the sale of Escalon property was to be shielded from De Jong (request number 19).

The Bellinos were involved from the beginning of De Jong's attempts to purchase the Escalon property. As did the Beaches, they understood that De Jong was the purchaser. De Jong's first offer to purchase the Escalon property was made in his name. Despite knowing this, the Bellinos participated in the conspiracy to deprive De Jong of his interest in the property. At trial, appellants testified falsely that De Jong had personally attended the kitchen meeting and had consented to transfer of title to Solario. In other words, the appellants' theory of the case was founded on noncredible evidence. The trial court did not abuse its discretion in awarding costs-of-proof against the Bellinos where De Jong proved his case against them by clear and convincing evidence. In

70

proving his case on this elevated standard of proof, De Jong necessarily disproved that the Bellinos understood his property interest to be gifted to Solario or that they did not knowingly participate in the conspiracy against him.  There was no error.

## XII

### *"Other Good Reasons for Denying the Requests"*

Appellants next argue that the trial court erred in awarding costs-of-proof because they had "other good reasons" for denying the requests for admission numbers 4 and 5, addressed to George Beach, and numbers 14 and 15 addressed to George and Susan Beach.  They argue that George Beach's lack of any conversation with De Jong prior to the Escalon purchase and lack of appraisal of the property rendered it excusable that George Beach did not admit that De Jong did not gift the property or admit that the property was worth $445,000 in April 2011.

We have already rejected appellants' assertion that they, or George Beach in particular, had a reasonable basis for denying their understanding that De Jong was not gifting the property to Solario.  As to the value of the Escalon property, the request for admission sought information that gave rise to an obligation to investigate.  " '[W]here it becomes clear from evidence introduced by either party at trial that the party who denied for lack of information or belief had access to the information at the time requests for admissions were propounded, sanctions are justified because that party has a duty to investigate.' " (*Bloxham v. Saldinger, supra*, 228 Cal.App.4th at p. 752, quoting *Smith v. Circle P Ranch Co.* (1978) 87 Cal.App.3d 267, 275.)  During trial, De Jong introduced evidence from a licensed realtor stating that the value of the Escalon property had been $445,000 in April 2011 based "on comparable sales around that time."  Thus, De Jong was required to prove a fact that the record indicates was practicably ascertainable based on historical comparable sales.  For this reason, the trial court did not abuse its discretion in awarding costs-of-proof.

71

## XIII

### *Costs-of-proof Where No Proof Was Made*

Appellants argue the trial court erred in awarding costs-of-proof where no proof was made that De Jong "has not forgiven or excused" payment owed to him for the transfer of the property to Solario (Beaches request for admission number 17), that the Bellinos requested that the Beaches transfer of title to Solario (Bellinos request for admission number 9), and that the Bellinos received $150,000 out of escrow from Solario to "shield" the money from De Jong (Bellinos request for admission number 19). The argument lacks merit.

Conspiracy often presents a challenge for a plaintiff to prove because defendants often attempt to conceal their wrongful conduct. (*Anderson v. Thacher*, *supra*, 76 Cal.App.2d at p. 72.) Here, appellants failed to make admissions to requests directly related to points that De Jong had to establish in order to prevail. A statement of decision is not required to address every factual issue raised at trial. (*Yield Dynamics, Inc. v. TEA Systems Corp*. (2007) 154 Cal.App.4th 547, 559.) Instead, a statement of decision must address only " 'ultimate findings rather than evidentiary ones.' " (*Ibid.*) Thus, the trial court's failure to make particular findings in its statement of decision on every one of the requests for admission that appellants now contest is not fatal to the award of costs by the same judge who heard the evidence at trial.

We discern no abuse of discretion in the award of costs as to the challenged requests for admission. De Jong proved that he was entitled to recover the value of the Escalon property, which he was wrongful deprived of by appellants' conspiracy. Any forgiveness or excuse of appellants' wrongful action would necessarily have been fatal to De Jong's claim. Instead, the trial court found that De Jong was entitled to approximately 80 percent of the value of the Escalon property at the time of its sale by Solario. The trial court also rejected appellants' assertions of affirmative defenses –

72

expressly finding noncredible the assertion that De Jong gifted his interest in the Escalon property.  The Bellinos were found to have intentionally hidden their conspiracy from De Jong.  Indeed, the Bellinos played a pivotal role in the agreement reached during the kitchen meeting in paying off the Beaches and then receiving proceeds from the later sale.  Appellants have not established an abuse of discretion in the award of costs-of-proof.

## XIV

### *Posttrial Attorney Fees as Costs-of-proof*

Appellants assert that the trial court erred in awarding fees incurred by De Jong after trial as costs-of-proof.  Specifically, appellants challenge the award to the extent that it includes fees incurred after the close of the evidentiary phase of trial.  The challenged fees include posttrial briefing and De Jong's preparation of the statement of decision.  We are not persuaded by appellants' argument that the trial court abused its discretion by including in costs-of-proof fees incurred after the close of evidence.

Section 2033.420 provides for costs-of-*proof* rather than the costs of introducing *evidence*.  (§ 2033.420, subd. (a) ["If a party fails to admit the genuineness of any document or the truth of any matter when requested to do so under this chapter, and if the party requesting that admission thereafter *proves* the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that *proof*, including reasonable attorney's fees." (Italics added.)].)  It has long been established that "[p]roof is something more than just evidence.  It is the establishment of a fact in the mind of a judge or jury by way of evidence.  (*People v. Mahon*ey (1939) 13 Cal.2d 729, 732.)  Until a trier of fact is exposed to evidence *and concludes* that the evidence supports a position, it cannot be said that anything has been proved." (*Stull v. Sparrow* (2001) 92 Cal.App.4th 860, 865-866, italics added.)  As the

California Supreme Court long ago observed, "There is an obvious difference between the words evidence and proof. The former, in legal acceptation, includes the means by which any alleged matter of fact, the truth of which is submitted to investigation, is established or disproved. The latter is the effect or result of evidence." (*Schloss v. His Creditors* (1866) 31 Cal. 201, 203.) Thus, proof encompasses more than the introduction of documentary or testimonial evidence. Proof includes argument and comments on evidence that help illuminate the veracity and significance of testimony and documents. (*Beaird v. Bryan* (1966) 244 Cal.App.2d 836, 842-843.)

The trial court did not abuse its discretion in including fees necessary to proving De Jong's case against appellants. Because the burden of proof extended beyond mere introduction of evidence, we reject appellants' challenge to fees incurred after the close of evidence. Arguments regarding the evidence in posttrial briefing and advocacy in helping craft the statement of decision – which provides the definitive findings of fact for purposes of our review – fall within the concept of proof. (*Stull v. Sparrow*, *supra*, 92 Cal.App.4th at pp. 865-866.) Until the trial court issues a final statement of decision, the factual findings remain at issue. (*Whittington v. McKinney* (1991) 234 Cal.App.3d 123, 127-128.) We conclude advocacy in connection with this phase of proof was encompassed within the trial court's discretion to award costs-of-proof.

Appellants offer no authority that supports their contention that costs-of-proof must be limited to the evidentiary phase of trial. Instead, they argue that costs-of-proof may not be imposed as a penalty by relying on *Brooks v. American Broadcasting Co.*, *supra*, 179 Cal.App.3d at p. 509. We agree that costs-of-proof are not intended to serve as a penalty. (*Ibid.*) Equally important, however, is the *Brooks* court's observation that the costs-of-proof statute "is designed to reimburse reasonable expenses incurred by a party in *proving* the truth of a requested admission . . . ." (*Ibid.*, italics added.) Under the Evidence Code, " 'Proof' is *the establishment* by evidence of a requisite degree of belief concerning a fact in the mind of the trier of fact or the court." (Evid. Code, § 190, italics

added.)  Including among costs-of-proof those efforts directly required to secure favorable factual findings comports with the letter and spirit of section 2033.420, subdivision (a).  Accordingly, the trial court did not exceed the bounds of its discretion in awarding costs-of-proof for posttrial attorney fees.

## XV

### *Costs-of-proof for Proof for Matters Outside the Scope of the Requests*

Appellants next argue the trial court erred in awarding costs-of-proof relating to "matters outside the scope of the requests for admission."  In this argument, appellants develop the following challenges to costs:  De Jong's reliance on two attorneys during trial, excessive eliciting of testimony regarding whether De Jong paid $340,500 to George Beach, introduction of expert witness testimony regarding the fair market value of the Escalon property in April 2011, excessive preparation for examination of Solario during trial, researching and drafting motions in limine motions opposing jury trial and to exclude appellant's evidence, and "a $59 phone call with Lisa Steves" regarding continuance of trial.  We agree that the fees incurred to oppose a jury trial and to exclude appellants' evidence did not constitute permissible costs-of-proof.

Appellants present fact-specific challenges to costs that lie with the unique province of the trial court to evaluate.  As the California Supreme Court has noted, " 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong" '— meaning that it abused its discretion."  (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095, quoting *Serrano v. Priest* (1977) 20 Cal.3d 25, 49.)  Thus, a trial judge is also in the best position to evaluate whether having counsel as second chair at trial constituted a reasonable fee.  (*Balsam v. Trancos, Inc*. (2012) 203 Cal.App.4th 1083, 1104.)

Appellants, however, did not raise the same challenges presented in this argument on appeal to the trial court.[5] With the exception of the contention that the pretrial motions may not be awarded under the costs-of-proof statute, appellants' new arguments on appeal raise fact-specific challenges that should have been addressed to the trial court in the first instance. As a general rule, new factually based theories of defense may not be raised for the first time on appeal. (*Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co.* (2011) 194 Cal.App.4th 891, 907.) We are, for example, poorly situated to evaluate the practical necessity of De Jong's second chair during trial. Likewise, the question of whether a day's preparation constituted excessive preparation in light of the highly contested allegation of conspiracy against multiple parties is a matter addressed to the sound discretion of the trial judge who observed the witnesses and the nature of the contest. We decline to second-guess the award of fees based on appellants' new theories regarding excessive costs.

An exception to the rule against raising new theories on appeal exists for pure questions of law based on undisputed facts. (*Ward v. Taggart* (1959) 51 Cal.2d 736, 742.) Here, appellants contend that the trial court lacked discretion to award as costs-of-proof those fees incurred by De Jong in opposing appellants' request for jury trial and in preparing motions in limine to *exclude* evidence. This contention has merit.

The trial court granted costs-of-proof in the amount of $189,532.50 – exactly the amount for which De Jong moved. Thus, the trial court included all of the time expended by De Jong's attorney on an itemized summary of hours submitted in support of the

---

[5] Although appellants' opposition to the motion for costs-of-proof mentioned request for admission number 3 of George Beach, it did not advance the argument on appeal that proof on this issue was excessive because it awarded a full day's worth of fees for a brief examination on the issue of the $340,500 payment. Likewise, appellants' opposition in the trial court mentioned De Jong's expert witness on the value of the Escalon property, but without asserting that it was excessive for De Jong's attorney to have spent a day preparing for the introduction of this evidence.

motion for costs-of-proof. De Jong's counsel included among these hours time for: preparing an ex parte application to strike appellants' demand for a jury trial, research for an in limine motion to exclude evidence, and preparation of motions to compel the production of documents at trial. Work on compelling the production of documents may relate to matters of proof for which the trial court awarded costs-of-proof. The trial court had discretion to determine that the hours relating to the production of documents fell into the category of efforts relating to proof and were therefore subject to section 2033.420. However, time devoted to opposing trial by jury and to the *exclusion* of evidence does not fall within section 2033.420's provision for costs incurred by De Jong proving facts not admitted by appellants.

De Jong contends that the trial court had discretion to determine that these fees for opposing trial by jury and to exclude evidence were so intertwined with costs that are permissible under section 2033.420, subdivision (a). Trial courts have discretion to apportion fees when some fees are recoverable and some are not. (*Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 443.) Moreover, a "trial court need not apportion fees between contract and noncontract claims when claims are ' " 'inextricably intertwined' " ' so it is ' "impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units" ' " (*Ibid.*, quoting *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111.) However, a trial court abuses its discretion when it includes nonrecoverable fees in an award and declines to make any apportionment between clearly recoverable and unrecoverable fees. (*Zintel Holdings,* at pp. 443-444.) Here, the itemization of fees by De Jong's counsel includes fees for work solely billed to the nonrecoverable tasks of opposing a jury trial and preparing an in limine motion to exclude evidence. Accordingly, we remand for the trial court to apportion fees so that fees claimed for opposing a jury trial and for an in limine motion to exclude evidence are not included in the award of costs-of-proof under section 2033.420.

## XVI

### *Costs-of-proof for Costs Not Actually Incurred*

Appellants argue that the trial court awarded costs-of-proof in excess of the costs actually incurred by De Jong. In this argument, appellants scour a spreadsheet of costs claimed by De Jong's trial attorney. The spreadsheet at issue contains an itemization of hours along with columns listing the requests for admission to which the hours relate. In appellants' view, the claimed total hours exceed the hours claimed on the spreadsheet that relate to the various requests for admissions. In response, De Jong details a calculation of fees based on the evidence in the record and consistent with the trial court's award. The itemization in the record of hours expended with respect to each request for admission totals the costs with the same result as that awarded by the trial court. Appellants have not carried their burden to demonstrate that the trial court abused its discretion in relying on the spreadsheet's total hours summary.

## XVII

### *Lack of Apportionment*

Finally, appellants argue that the trial court erred in making them jointly and severally liable for costs-of-proof awarded against each other. Here, the trial court made the Beaches and Bellinos jointly and severally liable for costs-of-proof even though not all costs related to each of the appellants. De Jong concedes that "the fees awarded to Mr. De Jong as a result of each defendant's failure to admit requests propounded on that defendant are personal to that defendant and the others are not jointly liable for them." We accept the concession and order the imposition of joint and several liability stricken from the postjudgment order awarding costs-of-proof.

### DISPOSITION

The judgment is reversed to the extent that it awards both prejudgment interest and appreciation in the Ripon property to De Jong. The postjudgment order awarding costs-

of-proof is reversed to the extent that it includes fees relating to requests for admission numbers 2, 4, 5, and 15 of the Bellinos, and for De Jong's opposition to a jury trial and his pretrial motion to exclude appellants' evidence.

On remand, the trial court is instructed to find and award compensation for De Jong's loss of use of his property interest in the form of either prejudgment interest *or* appreciation of the value of the Ripon property after Solario received title to that property. Also on remand, the trial court shall strike the imposition of joint and several liability for costs-of-proof when it recalculates costs-of-proof to exclude time claimed by De Jong's trial counsel relating to requests for admission numbers 2, 4, 5, and 15 of the Bellinos and for opposing the request for jury trial and in moving in limine to exclude appellants' evidence.

In the interest of justice, De Jong shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (5).)


　　　　　　　　　　　　　　　　　　　　　　　/s/_____
　　　　　　　　　　　　　　　　　　　　　　　HOCH, J.


We concur:


 /s/_____
HULL, Acting P. J.


 /s/_____
KRAUSE, J.